State, ex rel., v. Indiana, etc., Dairy Products—198 Ind. 288.

Sup. Ct. 98, 62 L. Ed. 304. In the case cited, the court said: "We further think it clearly follows from our numerous decisions upholding prohibition legislation that the right to hold intoxicating liquors for personal use is not one of those fundamental privileges of a citizen of the United States which no State may abridge." Appellant also claims that because said act of 1925 made no provision as to what should be done with intoxicating liquor on hand when the act went into force, the law is not valid. The act was approved March 4, 1925, and by proclamation of the Governor, the law became effective on April 25, 1925. If appellant had possession of intoxicating liquor on either date, he had plenty of time to divest himself of the possession of same so as to be free of criminal liability, if he desired. It was not necessary that the law contain such a provision in order to be constitutional. Appellant's objections to the prohibition law of 1925 cannot be sustained. There was no error in overruling the motion in arrest of judgment.

The judgment is affirmed.

---

STATE OF INDIANA, EX REL. LESH, ATTORNEY-GENERAL, v. INDIANA MANUFACTURERS OF DAIRY PRODUCTS ET AL.

[No. 25,303. Filed October 12, 1926.]

1. MONOPOLIES.—*Plaintiff has burden of proving, in action to enjoin a monopoly, that defendants had violated the law forbidding combinations in restraint of trade.*—In an action against an association of manufacturers of dairy products and its members to enjoin an alleged conspiracy in restraint of trade in violation of §§4651, 4652 Burns 1926, the plaintiff must allege and prove such facts as to affirmatively establish that an agreement existed between some of the defendants to do acts or to accomplish a purpose forbidden by law. p. 293.

2. MONOPOLIES.—*Conspiracy in restraint of trade by the members of association of manufacturers of and dealers in dairy products held not established by evidence.*—A conspiracy in

restraint of trade as prohibited by §§4651, 4652 Burns 1926 was not established by proof that manufacturers of dairy prod-. ucts had an association with paid secretary, whose duties, in part, were to send out questionnaires to the members to ascertain the prices which they are paying for milk and cream and which they were charging for the same and then to prepare a list of such prices and transmit it to each member, that the members held meetings at which plans were made and understandings reached for carrying out and executing the purposes of the organization, where there was no evidence as to the prices paid or received by the members or that there was any attempt or intent to limit, restrict or reduce the production, distribution or sale of milk or milk products.    p. 295.

3. APPEAL.—In determining on appeal whether the conclusions of law were erroneous, the special finding must be accepted as a full and correct recital of all the facts in issue that were established favorable to the party having the burden of proof. p. 297.

4. APPEAL.—Nothing can be added by inference or intendment to a special finding except what necessarily and inevitably follows from facts found.   p. 297.

5. WITNESSES.—*Inference that incorporated association had violated the law cannot be made because officers and members refused to testify as to their acts alleged to have been unlawful.*—Since an inference of guilt cannot be drawn against a witness who exercises his constitutional right not to testify against himself, an inference that an incorporated association has done unlawful acts cannot be drawn from the fact that certain of its officers and members claimed the constitutional right to refuse to answer questions concerning their acts which were alleged in the complaint to have been unlawful.   p. 299.

6. CORPORATIONS.—*Admissions of an officer that he had violated the law while acting as such officer not competent against corporation.*—The express admission of an officer of a corporation that he had committed a public offense while acting in the capacity of an officer or agent of the corporation would not be competent evidence against it.   p. 299.

7. APPEAL.—*Evidence that defendant corporation had done acts authorized by its charter not irrelevant when complaint charged that corporation was organized for unlawful purpose.*—In an action against an incorporated association of manufacturers and dealers charging conspiracy in restraint of trade in violation of §§4651, 4652 Burns 1926, the admission of evidence in behalf of the defendant that it had done the lawful acts which its charter authorized it to do was not wholly ir-

relevant, where the complaint charged that the organization of the corporation was merely a cloak under which the defendants carried on a conspiracy to do unlawful acts. p. 300.

8. APPEAL.—*Court will not presume that trial judge was improperly influenced by testimony to which he sustained objection after hearing it.*—An appellate tribunal cannot presume that the judge that tried the cause without a jury was improperly influenced by testimony to which he sustained an objection immediately after hearing it, notwithstanding he had overruled an objection to the question. p. 301.

9. APPEAL.—An assertion of fact by an attorney in making an objection which the court overruled cannot be accepted as establishing the truth of what was so stated. p. 301.

10. APPEAL.—*Collateral matters will not be considered on appeal unless brought into record by bill of exceptions in which judge certifies to their truth.*—When collateral matters are relied on to show that error was committed in the trial court, they must be incorporated in a bill of exceptions in which the judge certifies that they are true in order to have them considered on appeal. p. 301.

From Marion Superior Court (A 13,316); *Linn D. Hay,* Judge.

Action by the state on the relation of Ulysses S. Lesh, Attorney-General, against the Indiana Manufacturers of Dairy Products and others. From a judgment for defendants, the plaintiff appeals. (Transferred to the Supreme Court under subd. 2, §1357 Burns 1926.) *Affirmed.*

*Arthur L. Gilliom* and *U. S. Lesh,* Attorneys-General, *William P. Evans* and *D. F. Stansbury,* for appellant.

*Mark H. Miller, Samuel D. Miller, Frank C. Dailey, William H. Thompson, Albert L. Rabb, Thomas D. Stevenson* and *Perry E. O'Neal,* for appellees.

PER CURIAM.—The relator brought this action in the name of the state on his relation against the first named appellee, a corporation organized under the Voluntary Association Act (§4857 *et seq.* Burns 1926, Acts 1901 p. 289), and the persons, partnerships and corporations who were members of the association, to enjoin them

from carrying on an alleged conspiracy and from doing certain alleged unlawful acts, and to forfeit the charters of the first named corporation and of its several members that were corporations. The trial court made a special finding on which it stated a conclusion that the law was with the defendants and that the plaintiff was not entitled to recover anything, and rendered judgment accordingly. Appellant has assigned as error that the court erred in its conclusion of law upon the facts found, and in overruling the motion for a new trial.

The only issue submitted for trial was formed upon an answer of general denial to an amended complaint which, in substance, alleged that in December, 1917, the Indiana Manufacturers of Dairy Products had been incorporated as a voluntary association, not for pecuniary profits, but for the declared purpose of associating together all persons, firms and corporations interested in the manufacture of dairy products, to aid in the development of all branches of the dairy industry, to uphold and aid in enforcing the laws of Indiana relating to the dairy products industry in said state, and to protect its members in the transaction of their business and the farmers of the state from anything that would disrupt, discourage or burden the dairy industry, and to devise methods, and provide means, of developing the dairy industry and to encourage an increased production of milk and the raising of more profitable cows. That certain of the defendants were domestic corporations for the purpose of buying and selling milk and cream, and making butter, ice cream and other milk products, and certain individual defendants constituted partnerships as stated, engaged in the same business, and all of them were engaged in business at places within the State of Indiana, as set out, and all of them were members of the Indiana

Manufacturers of Dairy Products. That at an un-named time prior to January 1, 1921, the defendants entered into a combination and conspiracy in restraint of trade and commerce for the purpose of creating and carrying out restrictions in the production, distribution and sale of milk and milk products (as enumerated), and to limit and reduce the production of said arti-cles, and to increase or reduce the price thereof, as their selfish interests might be thereby served, and to suppress and prevent competition as between them-selves and others doing business within the territory wherein they operated, which was alleged to cover prac-tically the entire state. That, in furtherance of said combination and conspiracy, the defendants made a plan which they executed by organizing the members of the Indiana Manufacturers of Dairy Products into three divisions, as the "Butter Manufacturers," the "Ice Cream Manufacturers" and the "Milk Dealers," each with its separate officers and committees, and "all tied together with general officers and committees, with main offices for the general organization in the city of Indianapolis." And that they had, in addition to such officers and an "Executive Committee" of the main or-ganization and of each division organization, various departmental committees of "Ways and Means," "Ad-justment and Arbitration," "Publicity," "Legislative," and "Rates and Transportation," each of which had powers and duties not specified in the complaint. Also that, "by the combined power and concerted action of the several defendants, they are able to and in fact do arbitrarily control in a substantial and hurtful way the milk, butter, ice cream and allied milk products in this state. That they are able to and in fact do arbi-trarily control and dictate the price to be paid to the producers of milk and cream, and are and have been maintaining an unreasonable and unconscionable low

level of prices to the producer * * *. They are able to and in fact do arbitrarily control and dictate the price to be paid by the consumer of milk and cream * * * butter and other milk products * * * (and) ice cream, and are and have been maintaining an unreasonable and unconscionable high level of prices to consumers. That they are able to and in fact do arbitrarily control and regulate the quality of milk and milk products as delivered to the consumers thereof, and they tolerate and foster inferior and adulterated qualities thereof." That, "in order to finance its variant and devious pernicious activities," the association collects from its members dues in proportion to the business done, "by which method they are able to collect not only a large 'slush fund,' but also obtain useful data properly to gage the business activities of the several members and keep them in proper line as amongst themselves, as well as to control their relation to others." That the articles in which defendants are dealing are necessaries of life and are essential articles of trade and commerce, and said acts have "a blighting effect" upon producers deprived of fair profits for milk and cream, and upon consumers unable to pay the high prices exacted for defendants' said products. And that enforcement of the penal sections of the statute is inadequate to give relief without resort to equity.

Under the issue joined upon such complaint and the answer of denial, the appellant, as plaintiff, had the burden to establish the facts so alleged, or

1. enough of them, at least, to constitute the alleged cause of action; and to do this, it must affirmatively establish that an agreement had been made between some of the defendants, at least, to do acts or to accomplish a purpose forbidden by law. §§4651, 4652 Burns 1926, §§3866, 3867 Burns 1914,

§§1 and 2, ch. 243, Acts 1907 p. 490; 5 R. C. L. §5, p. 1065. But, by its special finding of facts, the trial court did not find that any combination or conspiracy existed or had ever been formed, or that any of the defendants ever had agreed with each other to do anything unlawful. On the contrary, finding No. 9 stated that "the Indiana Manufacturers of Dairy Products never entered into a scheme, design, understanding, combination or conspiracy in the form of a trust or in restraint of trade and commerce with the defendants or any of them or anybody" for either or any of the purposes alleged, quoting the language of the complaint and expressly negativing it. And while some of the recitals of this finding may possibly state mere conclusions, it clearly and obviously fails to find the existence of the conspiracy which plaintiff had alleged and had the burden of proving, as charged in the complaint. Neither did the special finding even mention the subject of any attempt or intention on the part of anybody to attempt to limit, restrict or reduce the production, distribution or sale of milk or milk products, or to control them in any way, except only that it recited that neither the defendants nor any of them were able to or did arbitrarily control or ever had combined to control the same. And if it be admitted, as appellant insists, that some parts of that finding stated conclusions and not facts, at least, it wholly failed to find facts establishing what appellant had alleged and was bound to prove to the effect that the defendants, in combination, were able to and did exercise such control. There was no finding that the prices paid to any producer were low, or that those paid by any consumer or received by any manufacturer were high, at any time, whether by reason of the acts or influence of the defendants or otherwise. The court found nothing at all as to prices. Neither was there any finding

that inferior and adulterated products were marketed. There was no finding that a "slush fund" was being or had been collected, or that any money had been collected or used for any unlawful purpose, but the court expressly found that the money received by the defendant association was used to pay the salary of its secretary, rent, stenographic services, office supplies, postage and other similar and legitimate expenses, and also found that the association really was organized for the lawful purposes stated in its articles of association as set out in the complaint.

But notwithstanding there was no finding that a conspiracy existed or that an agreement had been entered into for any unlawful purpose alleged in the complaint, and the court expressly found the corporation to have been organized for the lawful purposes of associating its members to aid in the development of the dairy industry, to aid in enforcing the law relating to dairy products, and to protect its members and the farmers from whom they purchased milk, just as it purported to be, appellant insists that "primary facts" were found that make out the alleged cause of action, even as against the express findings that many of the allegations of the complaint were not true. In support of this contention, appellant points to the findings that the Indiana Manufacturers of Dairy Products was a corporation; that the other appellees were engaged in various branches of the dairy products industry and were members of that corporation; that the association so incorporated was divided into classes consisting of ice cream manufacturers, butter manufacturers, milk distributors, and other dairy products manufacturers; that committees were provided for, such as "Ways and Means," "Adjustment and Arbitration," "Publicity," "Legislative" and "Rates and Transportation"; that the members paid dues based on the

amount of business done by each; that there were annual public meetings of the association and meetings of each division thereof at the same time; that the divisions held regular monthly meetings, and there were meetings of the officers and committees of the general organization and of the divisions, and also district meetings, "at which various meetings *plans were made and understandings reached for carrying out and executing the purposes of the organization as heretofore stated."* And that findings numbered 6 and 7 were as follows: "(6) As a part of the activities of the organization it was the custom of the executive secretary to ascertain, through the aid of a questionnaire, the price which certain members of the organization were paying and charging for milk and cream purchased and sold by them at the beginning of the month. These questionnaires were mailed out to certain members of the organization near the close of each month, and it was the understanding that the prices given should be the prevailing prices of the members giving the information for the month next ensuing the mailing of the questionnaire. From the data elicited through the questionnaire, the executive secretary constructed a price list bulletin, assuming to show the price paid and charged for milk and cream at the points where the sendees of the questionnaires had their principal places of business. These price list bulletins were mailed out to the members of the organization, including the several defendants in this action, the fore part of each month, and they were intended to [be] and in fact were used by the several defendants in fixing the price to be paid to the producers and received from the consumers for the various dairy products bought and sold in the conduct of their respective business operations. (7) In addition to the price bulletins made up and distributed by the executive secretary of the state

organization, many other bulletins were mailed out to the various members giving detailed information as to the business activities of the different members. In addition to the various meetings and communications by mail, various members of the organizations, including a number of the defendants, were in frequent communication with each other over the telephone." However, the most that can be said of these findings is that they state some of the facts from which, if other allegations of the complaint had been proved, a trial court might be justified in drawing the inference that a conspiracy had been formed for an unlawful purpose, to which the Indiana Manufacturers of Dairy Products was a party. But since the trial court failed and refused to find those other facts, as alleged, and failed and refused to draw the inference that a conspiracy existed, or to find the ultimate fact that the defendants ever conspired, combined or agreed together for any other purpose but the lawful purposes expressed in the articles of association of the Manufacturers of Dairy Products, or to find that any prices were raised or lowered or otherwise fixed, or even that the use of the bulletins resulted in the members fixing uniform prices, or that the trade and commerce in milk and milk products were ever controlled, or that any money was used for unlawful purposes, or that any defendant or defendants ever attempted or planned to do any of the unlawful acts to accomplish which the conspiracy was alleged to have been formed, it correctly concluded, as matter of law from the facts it did find, that appellant was not entitled to recover in this action.

In determining whether the conclusions of law are erroneous the special finding must be accepted as a full and correct recital of all facts in issue that were

3, 4. established favorable to the party having the burden of proof. *Standard Line Stock Ins. Co.*

v. *Atkinson* (1916), 185 Ind. 34, 111 N. E. 913; *Blair* v. *Curry* (1897), 150 Ind. 99, 101, 46 N. E. 672. Nothing can be added to the facts stated in the special finding by inference or intendment unless it be matters which necessarily and inevitably follow from the facts expressly found as therein recited. *Craig* v. *Bennett* (1897), 146 Ind. 574, 575, 45 N. E. 792; *Donaldson* v. *State, ex rel.* (1906), 167 Ind. 553, 557, 78 N. E. 182; *Kline* v. *Dowling* (1911), 176 Ind. 521, 524, 96 N. E. 579. And where the court found that the defendants had only agreed together for the lawful purposes expressed in the articles of association of the Indiana Manufacturers of Dairy Products, and its finding did not state that they had conspired, combined or agreed together to do, or actually had done, in concert or otherwise, any acts with the purpose of raising, lowering or fixing prices, restricting the production, distribution or sale of milk or milk products, restraining trade or suppressing competition, or controlling the quality of milk products made or marketed, but found, on the contrary, that they had not done any of the overt unlawful acts charged in the complaint to have been done in furtherance of the alleged conspiracy, the finding fell short of establishing the existence of a conspiracy for any unlawful purpose. Such a conspiracy is not necessarily established by the mere facts that persons engaged in the same line of business had an association which held meetings and had officers and committees that met and telephoned to each other, and that they paid dues with which a secretary was employed, and collected and, through the secretary, disseminated information as to prices that were being paid and charged by dealers in milk and milk products at selected places. And in the face of an express finding that all money collected was used for certain designated lawful purposes, the mere finding that the members paid dues in a pro-

portion as stated did not establish the further fact alleged in the complaint that the money was collected with the purpose to use it unlawfully.

In support of their contention that the finding in favor of appellees is not sustained by sufficient evidence, counsel for appellant point to the proof that certain officers and members of the Indiana Manufacturers of Dairy Products, and officers of other corporations that were associated as members of that body, when called as witnesses to prove the allegations of the complaint, refused to answer questions asked of them, giving as their reason that the complaint alleged they had done acts which, if really committed, would constitute a misdemeanor, and that it was an invasion of the constitutional rights of the witnesses to question them about acts for which they might be indicted and prosecuted. And counsel insist that the refusal of these officers and members of defendant corporations to testify is a circumstance from which the guilt of the corporations may be inferred. That is not the law. An inference of guilt cannot even be drawn against a witness who exercises his constitutional right not to testify against himself. *French* v. *Venneman* (1860), 14 Ind. 282; *Griffiths* v. *State* (1904), 163 Ind. 555, 560, 72 N. E. 563; *Wilson* v. *Ohio Farmers Ins. Co.* (1905), 164 Ind. 462, 464, 73 N. E. 892; §2267, subd. 4, Burns 1926, §235, ch. 169, Acts 1905 p. 584; Art. 1, §14, Indiana Constitution, §66 Burns 1926.

It is not permissible to make out a cause of action by merely accusing the defendant and calling him as a witness to prove the accusation, and then treating his refusal to waive his constitutional rights and testify against himself as proof that the accusation is true. Such a rule would nullify the constitutional privilege. And much less can the inference that a corporation has

done acts that were unlawful be drawn from the fact that one of its officers or stockholders or incorporating members has claimed the constitutional right not to answer when questioned about his own past acts. Even the express admissions of such officer or member that at a time in the past he had committed a public offense while acting in the capacity of an officer or agent of the corporation would not be competent evidence against it. *LaRose* v. *Logansport Nat. Bank* (1885), 102 Ind. 332, 345, 346, 1 N. E. 805; *Pittsburgh, etc., R. Co.* v. *Theobald* (1875), 51 Ind. 246, 249; *Blair-Baker Horse Co.* v. *First Nat. Bank* (1905), 164 Ind. 77, 83, 72 N. E. 1027; Ewbank, Indiana Trial Ev. §359. Appellant's brief is not so prepared as to present any further questions in relation to the sufficiency of the evidence.

Where the question was in issue whether or not the organization of a corporation for the declared purpose of doing certain lawful acts was merely a cloak 7. under which defendants had carried on a conspiracy to do unlawful acts, proof that the corporation really had done the lawful acts which its charter authorized it to do was not wholly irrelevant. Obviously, proof that it had done unlawful acts and had not done what its charter authorized it to do would tend to prove the contention that it was not organized in good faith to do what it professed to intend doing, and would tend to support an inference that its organization was only a cloak for an unlawful conspiracy. But even if the evidence admitted was wholly irrelevant, as appellant contends, it was not of a character to prejudice the rights of appellant; and its admission did not constitute reversible error.

Over an objection that the witness was not qualified to testify as an expert, T. H. Broughton was permitted

to give his opinion as to why the shipping sta-
tions for milk had increased in number from
1917 to 1921. But the record recites that, im-
mediately after his answer was given, counsel for ap-
pellant renewed his objection, insisting that "The
witness is certainly not qualified to give such evidence,"
and thereupon the court said that "The objection is
sustained and exceptions." The judge who made this
ruling made the special finding in the case, at the con-
clusion of a trial without a jury. And we cannot
presume that he was improperly influenced by evidence
to which he had sustained an objection immediately
after hearing what it was, even though he had overruled
an objection to the question in answer to which it was
given.

Appellant read in evidence from the minute book of
the Indiana Manufacturers of Dairy Products the min-
utes of meetings held on ten different dates.
Afterward an attorney for the defendants of-
fered to read "all the minutes with the exception
of those already in evidence," and after an objection
had been stated, because of certain facts which the at-
torney making the objection declared to exist, the court
said: "The minutes are admitted, subject to being
stricken from the record if not competent," and appel-
lant excepted. But it does not appear that any motion
was made to strike them out or any effort was made
to that effect after a further showing of facts had dis-
closed whether or not they really were incompetent be-
cause of the facts stated by counsel.

Counsel say that these minutes merely showed the
Indiana Manufacturers of Dairy Products to have done
some things that were lawful. For reasons
given above, this fact would not make their ad-
mission cause for reversing the judgment. Coun-

sel also say that the minutes were not authenticated, but the record does not show that to have been a fact, merely reciting that counsel so stated in making his objection. And an assertion of fact by an attorney in making an objection which the court overruled cannot be accepted by this court, on appeal, as establishing the truth of what was so stated. When collateral matters are relied on to show that error was committed by the trial court, a bill of exceptions should be obtained in which the judge of that court certifies they are true. The record by which an appeal must be determined consists of what is properly certified as being true; not of declarations by the attorneys in presenting objections which were overruled.

No available error is shown to have been committed in overruling the motion for a new trial.

The judgment is affirmed.

Gemmill and Willoughby, JJ., not participating.