TAYLOR v. DIRECTOR PUBLIC WORKS & SUPPLY ET AL.

[No. 18,207. Filed September 27, 1951. Rehearing denied November 30, 1951.]

*Walter Myers, Jr.,* of Indianapolis, for appellant.

*J. Emmett McManamon,* Attorney General and *J. Hurley Drake,* Supervisor Claims and Compensation Department, for appellees.

MARTIN, C. J.—The appellant, Essie Taylor, is the widow of John Taylor, deceased. She filed a claim before the Industrial Board of Indiana for compensation for the alleged accidental death of the said John Taylor while he was employed as a janitor for the appellee. The death was alleged to have been caused by an accident arising out of and in the course of said employment.

The application for compensation was answered by the appellee wherein it is alleged that the deceased employee, John Taylor, was not injured out of and in the course of his employment but that his death was suicide; that said decedent had no duties at the place where said death occurred.

Upon the issues thus made the matter was heard by a single member of the Board, resulting in a finding and order against the appellant.

Upon an application for review before the Full Board the matter was heard, resulting also in a finding and order against the appellant. An appeal to this court followed.

The appellant has assigned here that the award is contrary to law. This assignment presents all questions sought to be reviewed.

We quote a part of the findings and order of the Full Board as follows:

"The Full Industrial Board having heard the arguments of counsel and having reviewed all the evidence in said cause, and being duly advised in the premises herein, now finds:

"That plaintiff's decedent, John Taylor, was employed by the defendants herein on the 19th day of September, 1949; and, that his average weekly wage was $36.25; that on the said 19th day of September, 1949, plaintiff's decedent died from injuries received by him, which injuries did not arise out of nor in the course of his employment by the defendants, and that the cause of his death was suicide; . . . .

"The Full Industrial Board of Indiana now finds for the defendant and against the plaintiff on plaintiff's Form No. 10 application filed with the Industrial Board of Indiana December 19, 1949.

### "AWARD

"It is therefore considered, ordered and adjudged by the Industrial Board of Indiana that plaintiff take nothing as against the defendant by her Form No. 10 application of dependents of deceased employe for the adjustment of claim for compensation filed with the Industrial Board of Indiana December 19, 1949; and, that plaintiff pay all costs, if any, taxed in this cause. Dated this 12 day of April, 1951."

The facts surrounding the death of the decedent are not in dispute and may be summarized as follows: He was an employee of the appellee as a janitor in the State House; he was about 70 years of age; he was assigned to the basement and his duties were all on the first floor.

The only testimony available is that someone heard a loud noise and immediately thereafter saw the decedent stretched out on the second floor of the State House.

Orlando H. Banks, assistant custodian and foreman of janitors, testified in substance that he had charge of the janitors; that appellant's decedent was assigned to certain portions of the basement floor and had never been assigned or directed to any other floor; that if decedent needed supplies of any kind he would get them from the store room of the basement floor and if janitors on the other floors needed supplies they would have to go to the basement to get them; that the appellant's decedent had no occasion whatever to go to the fourth floor to hunt or look for tools and that each man knew his work.

Harvey E. McKimm, Superintendent of Buildings and Property of the State of Indiana, testified in part that he knew John Taylor, the decedent, who was working for him; that the decedent worked as a janitor and as a relief man in the parking lots; that he was supposed to go to work at 5:00 A. M., and did go to work at 5:00 A. M., on the morning of September 19, 1949; that the decedent's duties were to brush rooms, dust and sweep; that he worked on the first floor, which is the basement, and that he had no assignment on the second, third or fourth floors.

Mr. McKimm further testified that on the morning of September 19, 1949, he received a 'phone call that John Taylor had jumped or fallen from the fourth

floor of the State House; that he received the call around 6:30 A. M., and he dressed and went down to the State House, arriving there around 7:00 A. M.; that he saw the part of the fourth floor from which Taylor, the decedent, was supposed to have fallen, which was located in the northwest side of the building; that there is a railing about 34 inches high around that part of the building. He also testified that he made an investigation and saw a hand print on the outside of the railing; that there is a ledge which is six or eight inches wide and that the finger prints were in the dust on the outside of the ledge. He further testified there were no mops, buckets, brooms or truck around there, the floor was clear; that there were no mops, buckets or tools beside the body of Taylor where he lay in the rotunda; that he (McKimm) was not there at the time the decedent fell; that he talked with various witnesses but nobody saw what happened and nobody knew why Taylor was up there and nobody knew how he happened to fall.

The appellant testified in substance that her husband, the decedent, had at one time, in 1948, taken an overdose of sleeping tablets; that he was taken to the hospital and kept there about two or three weeks; that he returned home and thereafter attacked her; that Doctor Ezro advised her that Taylor, the decedent, should be given shock treatments in the hope that they might help his mental condition. Doctor Ezro also advised the appellant that it was not safe for her to live with the decedent because of his attack on her; that on account of his mental condition and the Doctor's advice she did leave the decedent and at the time of his death was not living with him; that a divorce case was pending. She also testified that the decedent had threatened suicide on different occasions.

The Full Board reviewed the evidence and found the fact of the employment of the decedent by the appellee on the date of his death, the average weekly wage, the date of the death of said employee, the fact of the dependency of the appellant upon the decedent for support and then found for the defendant and against the plaintiff on the other material allegations of plaintiff's complaint and further found that plaintiff's decedent died from injuries received by him, which injuries did not arise out of nor in the course of his employment by the defendant; that the cause of his death was suicide.

"Where an employee charged with the performance of a certain duty is found injured or dead at a place where it would be necessary for him to be in performing that duty, there is an inference that he was injured or died under circumstances indicating an accident arising out of and in the course of his employment. . . . . Of course, this inference may be rebutted by substantial evidence that the death was not so caused."

*School City of Hammond* v. *Moriarty* (1949), 119 Ind. App. 206, 85 N. E. 2d 273, and cases cited.

The appellant's decedent, having been in the employ of appellee, that relation continued unless the facts and circumstances were sufficiently strong to overcome this inference. When there is no eyewitness, the facts at issue may be proved by circumstantial evidence. This consists of the proof of certain facts and circumstances from which the court may infer other facts which usually and reasonably follow, according to the common experience of men. *Ohio, etc., Co.* v. *Industrial Board* (1917), 277 Ill. 96, 115 N. E. 149; *Czuczko* v. *Golden-Gary Co., Inc.* (1932), 94 Ind. App. 47, 177 N. E. 466;

*Odd Fellows Cemetery* v. *Daniels* (1941), 109 Ind. App. 127, 33 N. E. 2d 357.

When there are certain facts proved, the proper tribunal not only may, but it is its duty to draw therefrom legitimate inferences that seem most reasonable. *Indian Creek Coal, etc., Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N. E. 519, 525, 120 N. E. 709; *Czuczko* v. *Golden-Gary Co., Inc., supra.*

In the case of *Union Sanitary Mfg. Co.* v. *Davis* (1917), 64 Ind. App. 227, 232, 115 N. E. 676, this court said:

> "In other cases it is held that an injury arises 'out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person, familiar with the whole situation, as a result of the exposure occasioned by the nature of the employment then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

On the question of the accident arising out of and in the course of appellant's decedent's employment all of the evidence shows that the appellant's decedent had no business, as a janitor of the appellee, on the fourth floor

of the State House. The only inference which could be drawn from the evidence is that he was on some errand of his own and, that in so doing, went outside the scope of his employment. The place from which he was supposed to have jumped or fallen was a place common to the public.

As to the question of suicide, we have the evidence of the appellant which shows the appellant's decedent took an overdose of sleeping tablets, was confined to the hospital for mental treatment, the attack on the appellant, the advice of the Doctor that the decedent needed mental treatment, also the Doctor's advice to appellant that it was not safe for her to live with him, his threatening on several occasions to commit suicide, his having family trouble, the suit for divorce pending and a plea to dismiss the suit. We also have the evidence that there was a hand print on the banister at the point from which appellant's decedent was supposed to have fallen or jumped to his death. There were no other marks in the dust on the banister to indicate that anyone had fallen over it but instead just the clear print of the hand showing that appellant's decedent must have placed his hand on the banister and jumped, otherwise the hand print would not have been distinct, but there would have been other marks where the body had come in contact with the banister in falling over it.

It is our opinion that there is sufficient evidence to overcome the inference that decedent met his death while in the performance of his duties and that his death was not the result of suicide.

With the finding against the appellant upon these material allegations, the award must stand unless it may be said by this court that the evidence is so conclusively against the finding of the Board as to force a conclusion contrary to that of the

Board. *Nichols* v. *Winslow Coal Corp.* (1939), 106 Ind. App. 321, 18 N. E. 2d 475.

We cannot say that the evidence is of such a character as to force a conclusion contrary to that reached by the Board. But from the evidence considered  in its entirety we are of. the opinion that the Board could have reasonably concluded in the instant case that the death of the employee was not due to an accident arising out of and in the course of his employment.

We have studied the evidence carefully and conclude that we cannot say, as a matter of law, that the death of the decedent was due to an accident arising out of and in the course of his employment by the appellee.

Finding no reversible error, the award is affirmed.

NOTE.—Reported in 100 N. E. 2d 831.