Stanton H. GASH, Defendant-Appellant,

v.

William KOHM, Rosemary Kohm,
Plaintiffs-Appellees.

No. 1–584A115.

Court of Appeals of Indiana,
First District.

April 18, 1985.

Rehearing Denied May 29, 1985.

John D. Clouse, Michael C. Keating, Laurie A. Baiden, Evansville, for defendant-appellant.

Terry Noffsinger, Noffsinger & Deig, Evansville, for plaintiffs-appellees.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Stanton Gash appeals a jury verdict finding him liable for the wrongful death of Kathleen Mary Kohm. Judgment was entered in favor of William and Rosemary Kohm, Kathleen's parents, for $5,000. We affirm.

## FACTS

On April 5, 1981, Kathleen Kohm went jogging near her home in Christmas Lake Village, Indiana, but never returned. About 3:00 P.M., her family became concerned about her disappearance, and began looking for her. Despite an extensive search organized by the police, Kathleen could not be located. Then, on June 11, 1981, Steve Byers discovered her badly decomposed body in an isolated area near Christmas Lake. An autopsy revealed Kathleen's death was caused by a gunshot wound to the back of the head.

A police investigation into the homicide centered on Gash when police learned his car was spotted on April 5, 1981, near the area where the body was found. Gash told police he had been drinking beer and watching basketball that day with friends. While on his way home, he stopped to urinate and his car became stuck in the mud. Further investigation revealed the car was stuck over 300 feet off the nearest road and 383 feet from where Kathleen's body was discovered. All other attempts by the police to link Gash with the killing failed. Searches of Gash's home and his brother's residence produced no incriminating evidence. Scientific examinations of Gash's car and clothing and ballistic tests performed on the bullet recovered from Kathleen's skull were inconclusive.

After reviewing the evidence uncovered by the state police, the Spencer County Prosecutor decided against prosecuting Gash. Unhappy with this decision, Kathleen's parents filed a civil suit against Gash for wrongful death. The Kohms alleged Gash caused their daughter's death and asked for damages.

At trial, the Kohm's case consisted entirely of circumstantial evidence. The Kohm's established the proximity of Gash's car on the·date of Kathy's disappearance to the area where the body was ultimately found. Also, Gash had made certain inconsistent statements regarding his conduct on April 5, 1981. It was also established that after being questioned by police on June 2, 1981, Gash went to Florida despite his promise to again meet with the police on June 4, 1981. Moreover, despite the inconclusive ballistic tests, a firearms expert established the bullet that killed Kathleen was .22 caliber. Gash owned a .22 caliber gun. The only other evidence adduced at trial was Gash's refusal to answer questions from the plaintiffs' counsel on the basis of his fifth amendment right. Gash was forced to assert his privilege against self-incrimination in the presence of the jury. Based on this evidence the jury returned a verdict against Gash and he now appeals.

## ISSUES

The issues raised by Gash in his brief are as follows:

1. Did the court err in forcing Gash to assert his 5th amendment right in the jury's presence?

2. Was the jury's verdict supported by sufficient evidence?

3. Were the Kohms awarded excessive damages?

4. Was Gash entitled to a continuance because the Kohms totally failed to comply with the court's pre-trial order on specifying damages?

5. Were errors committed in the giving and refusing of certain instructions?

## DISCUSSION AND DECISION

*Issue One*

The first issue involves Gash's assertion of his privilege against self-incrimination

during the civil trial. Both the United States and Indiana Constitutions, in nearly identical language, protect the defendant from being compelled to testify against himself in a criminal proceeding.[1] In the present case, Gash was called as a witness by the plaintiff and, asserted his fifth amendment privilege in front of the jury, declining to answer substantive questions. Gash argues the trial court erred because he was improperly penalized for asserting his privilege to the extent that the jury was allowed to infer his liability from his refusal to testify.

Indiana law is in conflict concerning the precise issue presented. *State ex rel. Lesh v. Indiana Manufacturers of Dairy Products* (1926), 198 Ind. 288, 153 N.E. 499, was a civil case charging a corporation with improper conduct. The trial court held in favor of Indiana Manufacturers and the state appealed. The state argued that because certain corporate officers refused to answer questions, relying on their fifth amendment privilege, this was a circumstance from which the wrongdoing of the corporation could be inferred. Our supreme court stated that such an inference could not be drawn from a witness who exercised his constitutional right. However, an earlier Indiana case held that, while assertion by a party of the privilege against self-incrimination is not conclusive of guilt, the jury may consider the defendant's refusal to testify in a civil case. *Morgan v. Kendall* (1890), 124 Ind. 454, 24 N.E. 143.

> "[A jury has] the right and it is their duty not merely to listen to the words which a witness utters but to note his manner of testifying—not merely to observe how far his knowledge extends but to note equally where his ignorance, evasion, silence, hesitation or lapses of memory occur; ... The true position would seem to be that while the declination of the witness to answer is not to be taken as an admission of his guilt, yet it is a

1. Ind. const. art. 1 § 14 reads: "... No person, in any criminal prosecution, shall be compelled to testify against himself."

U.S. const. amend. 5 reads: "No person ... shall be compelled in any criminal case to be a witness against himself; ..."

circumstance in his manner of testifying, which, like any other physical or mental circumstances, such as delay, pallor, evasion etc., may with other circumstances be considered by them in weighing the witness' testimony."

*Morgan* at 459–60, 24 N.E. at 145. Furthermore, the *Morgan* court determined that their holding did not "violate the well known rule that a party in a criminal case shall not be compelled to furnish evidence against himself, for as we have seen, when prosecuted criminally, his conduct in refusing to testify in the civil case can not be given in evidence against him." *Id.* at 461, 24 N.E. at 145.

■ We believe the *Morgan* decision correctly states the law regarding the scope of the fifth amendment privilege in civil cases. While our research has uncovered no recent cases supporting Gash's position, we have found a number of recent cases, directly on point, which follow the rule expressed in *Morgan.* Although the refusal to testify in a civil case cannot be used against the one asserting the privilege in a subsequent criminal proceeding, the privilege against self-incrimination does not prohibit the trier of fact in a civil case from drawing adverse inferences from a witness' refusal to testify. *Baxter v. Palmigiano* (1976), 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810; *Cabral-Avila v. Immigration and Naturalization Service* (9th Cir.1978) 589 F.2d 957, *cert. denied,* (1979) 440 U.S. 920, 99 S.Ct. 1245, 59 L.Ed.2d 472; *In re Meredosia Harbor & Fleeting Service* (7th Cir.1976) 545 F.2d 583, *cert. denied, Farmers and Traders State Bank of Meredosia v. Magill,* 430 U.S. 967, 97 S.Ct. 1649, 52 L.Ed.2d 359; *Justice v. Laudermilch* (M.D. Pa.1978) 78 F.R.D. 201 (dicta); *Hughes Tool Co. v. Meier* (D.Utah 1977) 489 F.Supp. 354; *Eldridge v. Herman* (1980), Iowa, 291 N.W.2d 319; *Labor Relations Commission v. Fall River Educators' Association* (1981), 382 Mass. 465, 416 N.E.2d

1340; *State ex rel. Schuler v. Dunbar* (1981), 208 Neb. 69, 302 N.W.2d 674; *Bastas v. Board of Review* (1978), 155 N.J.Super. 312, 382 A.2d 923; *Marine Midland Bank v. John E. Russo Produce* (1980), 50 N.Y.2d 31, 427 N.Y.S.2d 961, 405 N.E.2d 205; *City of Philadelphia v. Kenny* (1977), 28 Pa.Comm. 531, 369 A.2d 1343, *cert. denied* 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281, *reh. denied* 434 U.S. 1025, 98 S.Ct. 754, 54 L.Ed.2d 774 (1978) (decision includes long list of cases from other jurisdictions supporting the rule as we have stated it). Therefore, it was proper for the jury to consider Gash's assertion of the fifth amendment privilege and to draw therefrom the inevitable inference he caused Kathleen's death.

Gash's argument that he is being penalized for asserting his fifth amendment right is incorrect. He cites *Sabouri v. Hunter* (1979), Okl., 596 P.2d 891, where the trial court prevented a party from pursuing discovery because he had earlier refused to answer deposition questions invoking the fifth amendment. The appellate court reversed. *Sabouri* is one in a line of cases to which the *Garrity* rule applies prohibiting the imposition of a sanction for asserting the fifth amendment privilege.[2] In the present case, Gash was neither compelled to testify nor directly sanctioned for his refusal to answer questions. The only detriment suffered by Gash was the increased possibility that he would be found civilly liable for damages. *Marine Midland Bank.* To consider such a detriment in the same light as the sanctions applied for exercising the fifth amendment privilege outlawed in *Garrity* and its progeny, is simply too tenuous. *In re Meredosia.* The assertion of Gash's fifth amendment right in the presence of the jury was not error because the constitutional guarantee does not prohibit the jury from drawing an inference of liability therefrom in a civil trial.

**2.** In *Garrity v. New Jersey* (1967), 385 U.S. 493, 87 S.Ct. 616–17, 17 L.Ed.2d 562, the supreme court held state statutes which force state employees to waive their fifth amendment privilege were unconstitutional. *See also Spevack v.*

*Klein* (1967), 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (attorney could not be compelled to incriminate himself during disciplinary proceedings against him under threat of disbarment).

*Issue Two*

■ Gash next argues the evidence was insufficient to support the jury's verdict. The parties devote much time in their briefs discussing our standard of review. Both sides note the distinction between the burden of proof in civil and criminal cases. Apparently, each side believes this distinction affects our standard of review. However, regardless of whether we are reviewing the sufficiency of the evidence in a civil or criminal case, our standard is the same. *Cf. Lowery v. State* (1984), Ind., 471 N.E.2d 258, 262. We will not reweigh the evidence or judge the credibility of witnesses. *Trinity Lutheran Church, Inc. v. Miller* (1983), Ind.App., 451 N.E.2d 1099, 1102 *trans. denied; Peters v. State* (1983), Ind.App., 449 N.E.2d 311, 313. We consider only the evidence most favorable to the verdict. *Gary v. State* (1984), Ind., 471 N.E.2d 695, 699; *Terre Haute Regional Hospital, Inc. v. El-Issa* (1984), Ind.App., 470 N.E.2d 1371, 1378 (transfer pending). If there is substantial evidence of probative value concerning each element of the claim we will not disturb the judgment. *Hoehn v. State* (1984), Ind.App., 472 N.E.2d 926, 931; *In re Petition of Meyer* (1984), Ind.App., 471 N.E.2d 718, 722. Regardless of how the burden of proof is characterized at trial, our standard of review is the same. *See Orkin Exterminating Co., Inc. v. Traina* (1984), Ind.App., 461 N.E.2d 693 (transfer pending) (change from preponderance to clear and convincing burden of proof in punitive damages cases did not alter standard of review on appeal).

■ Mindful of our standard of review we now consider the evidence adduced at trial. Gash argues the case against him consisted solely of circumstantial evidence. However, this does not necessarily render the jury's verdict improper. Indeed, where no eyewitness testimony was available, "the facts at issue may be proved by circumstantial evidence." *Taylor v. Director of Public Works & Supply Superintendent of Public Buildings & Property* (1951), 121 Ind.App. 650, 100 N.E.2d 831. Moreover, in a civil case circumstantial evidence

need not exclude every reasonable hypothesis inconsistent with guilt. *Phegley v. Huffman* (1971), 149 Ind.App. 100, 103, 271 N.E.2d 201, 203, *trans. denied.*

■ Because there was no direct evidence of liability the jury had to infer Gash caused Kathleen's death from the facts proved at trial. In such a case " '[t]he important question is whether the inference is reasonably well supported by the evidence. We must judge the inference as we would any other, taking into consideration that its probability may be attenuated by each underlying inference.' " *Dean v. Insurance Co. of North America* (1983), Ind.App., 453 N.E.2d 1187, 1195 *quoting Cora Pub, Inc. v. Continental Casualty Co.* (5th Cir.1980), 619 F.2d 482, 485–86. In the case at bar, the evidence showed Gash's car became stuck, 383 feet from where Kathleen's body was ultimately found, soon after she disappeared. Also, the evidence showed the same caliber gun that caused Kathleen's death was found in Gash's home. From this evidence, the jury could have inferred Gash had the opportunity to kill Kathleen.

This inference of opportunity is complemented by other evidence from which Gash's liability could be inferred. He told Paul Wyatt that the point where his car was hung-up on the day in question was several miles from where it was actually stuck. When questioned about his activities on the day in question Gash responded that he had not seen anyone while in Christmas Lake Village. This was untrue. After getting stuck in the mud, Gash sought the assistance of Jack Harry who lived nearby. In fact, Gash told Harry he was coming from Chrisney, Indiana, where he had been drinking beer and watching basketball on television with some friends. When questioned by the Indiana State Police Gash's story changed. He told an officer he had been watching television alone in his residence in Christmas Lake Village and was driving back to his home in Evansville, Indiana. From these inconsistent statements it could be inferred that Gash was attempting to direct suspicion away

from himself. Although Gash was scheduled to meet with police on June 4, 1981, he went to Florida without telling the police or his wife. This sudden trip could be characterized as flight and, although standing alone does not raise a presumption of guilt, it is competent to show consciousness of guilt. *Bradley v. State* (1972), 153 Ind. App. 421, 287 N.E.2d 759.

■ Finally, as we have established, the fact that Gash asserted his fifth amendment right instead of answering questions put to him at trial was a circumstance from which liability could be inferred. It is impermissible, even in a civil case, for the plaintiff to establish his entire case by simply calling the defendant to the stand, and in front of the jury have him assert his privilege against self-incrimination. *Lesh,* 198 Ind., at 299, 153 N.E. at 503. However, in the present case, Gash's use of his privilege was not the only evidence of his liability. The evidence of his opportunity, inconsistent statements and flight together with the inevitable inference of guilt drawn from his exercise of his fifth amendment right constitutes evidence of probative value from which a reasonable inference of Gash's liability could be drawn. We therefore find sufficient evidence to affirm the jury's verdict.

*Issue Three*

■ Gash next argues the damage award was excessive. The jury awarded $5,000 in compensatory damages. At trial, the Kohms proved funeral expenses of $2,767.50. The balance of the award was apparently intended to compensate the Kohms for the loss of Kathleen's services. Gash contends the Kohms failed to prove the value of these services.

Mrs. Kohm testified that Kathleen did household chores and baby sat for the family twice every week. The value of such services is to be determined by the jury. *Childs v. Rayburn* (1976), 169 Ind.App. 147, 346 N.E.2d 655, *trans. denied.* We review this determination by considering whether the award was so excessive as to indicate passion, prejudice, or partiality.

*State v. Bouras* (1981), Ind.App., 423 N.E.2d 741, 746. We cannot say a $2,232.50 award for the loss of Kathleen's services was so outrageous that it was motivated by impermissible factors. Furthermore, because the total award was within the evidence adduced at trial, it will not be disturbed. *Id.*

*Issue Four*

In the pre-trial order the trial court directed the Kohms to supply Gash with an itemization of damages claimed. After their failure to comply with this order, Gash moved for a continuance. The trial judge denied the motion and Gash now challenges this denial on appeal.

■ The granting of a continuance is within the sound discretion of the trial court. Indiana Rules of Procedure, Trial Rule 53.5. The trial court's denial of a motion for a continuance will not be disturbed on appeal, absent a showing of clear and prejudicial abuse of discretion. *Indiana Tri-City Plaza Bowl, Inc. v. Glueck's Estate* (1981), Ind.App., 422 N.E.2d 670, 673, *trans. denied; Hinds v. McNair* (1980), Ind.App., 413 N.E.2d 586, 609. As in *Hinds,* Gash has failed to show how he was prejudiced by the denial of his motion. Although he cites cases which indicate itemization of damages in a wrongful death action is important, Gash fails to specify how he was harmed in this particular case. Our review of the record shows the Kohms provided Gash with a witness list and list of exhibits. Furthermore, the measure of damages in a wrongful death case is well defined by both statute and case law. *See e.g., Boland v. Greer* (1980), Ind.App., 409 N.E.2d 1116, 1118, *trans. denied* (interpreting Indiana Code section 34–1–1–8). Therefore, Gash had sufficient information prior to trial from which he could discern how the Kohms intended to prove damages. Accordingly, we find no abuse of discretion.

*Issue Five*

■ The final issue raised by Gash challenges two instructions given by the

trial court. First, Gash argues the court's instruction number 21 incorrectly set out the standard of proof. Although Gash agrees the plaintiffs needed to prove their case by a preponderance of the evidence, he contends a preponderance means more, in this case, than the weight of the evidence. Gash's instruction stated, "[t]o create a preponderance, the evidence must overcome the opposing presumption of innocence, as well as the opposing evidence." Record at 198. The trial court properly refused this instruction because it did not correctly state the law.

Gash's tendered instruction was taken almost verbatim from *The Continental Insurance Co. v. Jachnichen* (1887), 110 Ind. 59, 10 N.E. 636. In that case, our supreme court stated that the standard of proof in a civil case is a preponderance of the evidence, even where the matter in issue involves the imputation of a crime. The court went on to say, however, that in such cases the jury must scrutinize the evidence with greater caution before reaching a conclusion. This statement was questioned in the recent supreme court case of *Traveler's Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 361. In *Armstrong,* the court stated that, despite the language in *Jachnichen,* a preponderance of the evidence simply means the greater weight of the evidence. In the case at bar, where the parties' interest is solely economic, the plaintiff must merely ·show the weight of the evidence falls in his favor. *Tucker v. Marion County Department of Public Welfare* (1980), Ind.App., 408 N.E.2d 814, 820. To instruct the jury that any more is required would be contrary to law. The trial court properly refused Gash's instruction.

■■ Similarly, Gash argues the court did not properly instruct the jury regarding the degree of proof necessary to create a preponderance.· Gash's instruction stated that the material allegations must be proved by substantial evidence. He defined substantial evidence as that which a reasonable mind might accept as adequate. Assuming this instruction correctly states

the law, we are not convinced the court's refusal of this instruction was reversible error. It is not error to refuse an instruction when its subject matter is adequately covered by other instructions given by the court. *Honey Creek Corporation v. WNC Development* (1975), 165 Ind.App. 141, 331 N.E.2d 452, *trans. denied.* We believe the court's instruction number 3 sufficiently explained the jury's duty to examine all the evidence and decide whether the Kohms sustained their burden of proof. Other instructions properly and adequately defined a preponderance of the evidence. Therefore, refusal of Gash's instruction was not improper.

Judgment affirmed.

NEAL, J., concurs.

ROBERTSON, J., dissents in part and concurs in part with separate opinion.

ROBERTSON, Judge, dissenting in part, concurring in part.

I respectfully dissent from the resolution of the second issue relating to the sufficiency of the evidence. Giving full cognizance to the standard of review as stated in the majority opinion, I am of the opinion that there was an absence of substantial evidence of probative value to support the judgment. The absence of direct evidence in support of the allegations of the complaint is obvious. The other evidence adduced by the plaintiffs at trial falls short in establishing by a preponderance of probative evidence, including the reasonable and logical inferences that flow therefrom, that there is any causality between Gash's conduct and the decedent's death. Taking that holding of *Phegley v. Huffman,* (1971) 149 Ind.App. 100, 271 N.E.2d 201, (circumstantial evidence need not exclude every reasonable hypothesis inconsistent with guilt) one step further, circumstantial evidence does not permit conjecture, speculation, or guess, and, although the jury is entitled to choose between conflicting inferences, it cannot choose between conflicting possibilities. *State Farm Mut. Auto Ins. Co. v. Shuman,* (1977) 175 Ind.App. 186, 370

N.E.2d 941. The reasonable hypothesis concept stated in *Phegley* should not be utilized to fill an evidentiary void or by-pass the requirement that each essential element of the tort must be proven by a preponderance of the evidence.

Although I would reverse on this issue, I concur with the remainder of the majority opinion.