Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 17 2014, 7:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN P. BRINSON**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KYLE HUNTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| $2,500.00 IN LAWFUL UNITED STATES CURRENCY, 2002 CHEVROLET AVALANCHE, and 1970 CHEVROLET EL CAMINO (Demarco D. Hawkins), | ) ) ) ) ) | |
| Appellant-Defendant, | ) ) | |
| vs. | ) ) | No. 82A01-1307-MI-326 |
| STATE OF INDIANA ex rel. EVANSVILLE-VANDERBURGH COUNTY MULTI-AGENCY DRUG TASK FORCE, | ) ) ) ) | |
| Appellee-Plaintiff. | ) ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable David D. Kiely, Judge
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-1111-MI-580

**February 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Demarco D. Hawkins ("Hawkins") appeals the trial court's order granting forfeiture of a 2002 Chevrolet Avalanche ("the Avalanche") and a 1970 Chevrolet El Camino ("the El Camino") (together, "the Vehicles") that were seized when he was arrested for suspicion of dealing in marijuana. He raises the following restated issue for our review: whether the evidence presented was sufficient to support the trial court's grant of forfeiture of the Vehicles.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On October 11, 2011, members of the Evansville-Vanderburgh County Multi-Agency Drug Task Force ("the Drug Task Force") served a warrant on 816 East Mulberry Street in Evansville, Indiana, where Hawkins lived with his mother, Sheryl Briggs ("Briggs"). During the search, the Drug Task Force found 482 grams of marijuana, four boxes of sandwich bags, a digital scale, a wooden grinder, three cell phones, freezer bags containing marijuana residue, miscellaneous documents containing Hawkins's name, three pistols, the Avalanche, and the El Camino. All of these items were seized pursuant to Hawkins's arrest for dealing in marijuana and possession of marijuana.

On November 2, 2011, the State filed a complaint seeking forfeiture of the Vehicles and $2,500.00 in cash that Briggs had used to bail Hawkins out of jail. The State alleged that the Vehicles were subject to forfeiture because they were personal property purchased with money that was traceable as a proceed of the violation of a criminal statute or because they were used or intended for use to transport or facilitate the transportation of marijuana

2

for the purpose of committing, attempting to commit, or conspiring to commit dealing in marijuana.

In 2009, Hawkins had been an employee of The Car Concierge, a used car dealership in Evansville, Indiana. Through this employment, Hawkins had access to dealer license plates. The Car Concierge went out of business sometime in 2010. Hawkins testified that he would purchase vehicles, fix them up, and resell them for a profit. *Tr.* at 38, 45-46, 138-39.

On approximately April 21, 2011, Hawkins bought the Avalanche from a car dealer in Ohio, using his employment at The Car Concierge to avoid paying sales tax. On the Assignment of Ownership form, The Car Concierge is listed as the buyer of the Avalanche. Hawkins testified that he purchased the Avalanche with his own money, but purchased it as an employee of The Car Concierge. *Id.* at 48-49. He stated, "I purchased it as an employee of The Car Concierge, but I was driving the car." *Id.* at 49. He paid $7,500.00 for the Avalanche, paying half in cash and half with a credit card. Hawkins never transferred title to himself or The Car Concierge because he was using dealer license plates and planned to sell it after he fixed it up. *Id.* at 141. Although the Avalanche's title was not in his name, he had possession of the title and produced it at trial.

Sometime after June 28, 2011, Hawkins purchased the El Camino for $4,700.00 cash, which had been proceeds from the sale of another car. Hawkins purchased the El Camino from an individual in Wisconsin. He testified that he bought the El Camino himself and not as an employee of The Car Concierge. *Id.* at 44. He did not transfer the

3

title to his name because he was not driving it and intended to fix it up and resell it. Hawkins had possession of the title for the El Camino and produced it at trial.

Hawkins had not filed taxes or reported income to the federal government for ten years. Although Hawkins said he had been employed by The Car Concierge, he did not report any income to the federal government for the years of 2009 and 2010. Hawkins indicated that he had worked in landscaping in the summer of 2010 and earned about $6,500.00. He also produced a check for $6,315.00, written on June 28, 2011 and cashed on June 29, 2011 that he stated was for the sale of a previously-owned car. *Pet'r's Ex*. 1. Hawkins testified that he had received a legal settlement of approximately $13,000.00 at some point prior to his arrest. *Tr*. at 149.

A trial was held on the forfeiture complaint, during which Hawkins asserted his Fifth Amendment right to remain silent on many questions relating to the sale of marijuana and to the use of any proceeds from the sale of marijuana. At the conclusion of a trial on the forfeiture complaint, the trial court denied forfeiture as to the $2,500.00 and granted forfeiture as to the Vehicles. Hawkins now appeals.

## DISCUSSION AND DECISION

"Because forfeiture cases are civil in nature, we use the standard of review employed in other civil cases where an appellant questions the sufficiency of the evidence to support a verdict." *$100 and A Black Cadillac v. State*, 822 N.E.2d 1001, 1006 (Ind. Ct. App. 2005), *trans. denied*. We consider only the evidence most favorable to the judgment and any reasonable inferences that may be drawn therefrom. *Id*. We neither reweigh the evidence nor reassess the credibility of the witnesses. *Id*. When there is substantial evidence of

4

probative value to support the trial court's ruling, it will not be disturbed. *Lipscomb v. State*, 857 N.E.2d 424, 426 (Ind. Ct. App. 2006) (citing *Jennings v. State*, 553 N.E.2d 191, 192 (Ind. Ct. App. 1990)). We will reverse only when we are left with a definite and firm conviction that a mistake has been made. *Id.*

Indiana's forfeiture statute states in relevant part that, "[a]ny portion of real or personal property purchased with money that is traceable as a proceed of a violation of a criminal statute" may be seized. Ind. Code § 34-24-1-1(a)(3). The State must demonstrate by a preponderance of the evidence that the property was subject to seizure. Ind. Code § 34-24-1-4(a).

Hawkins argues that the trial court erred when it granted forfeiture of the Vehicles because there was insufficient evidence to support the judgment. He contends that the trial court drew an adverse inference from his refusal to answer questions regarding the marijuana and whether he used proceeds from the sale of marijuana to purchase the Vehicles and used such adverse inference as the evidence to support forfeiture. Hawkins asserts that, because it is impermissible for a trial court to base its determination solely on an assertion of the privilege against self-incrimination, there was insufficient evidence presented to support the forfeiture of the Vehicles. He also argues that the trial court erred when it found that he did not own the Vehicles.

"Although the refusal to testify in a civil case cannot be used against the one asserting the privilege in a subsequent criminal proceeding, the privilege against self-incrimination does not prohibit the trier of fact in a civil case from drawing adverse inferences from a witness'[s] refusal to testify." *Gash v. Kohm*, 476 N.E.2d 910, 913 (Ind.

5

Ct. App. 1985), *trans. denied*. However, "[i]t is impermissible, even in a civil case, for the plaintiff to establish his entire case by simply calling the defendant to the stand, and in front of the jury have him assert his privilege against self-incrimination." *Id.* at 914. Therefore, even though an adverse inference can be drawn by a witness's assertion of his Fifth Amendment rights, a judgment in a civil case cannot be solely based on such adverse inference; additional evidence must also support such judgment. *Id.*

Here, the evidence presented showed that Hawkins had not filed federal tax returns for ten years and that he did not have a steady source of income. Hawkins testified that he would purchase vehicles, fix them up, and resell them for a profit. *Tr.* at 38, 45-46, 138-39. He testified that he had been employed by The Car Concierge, but it had closed in 2010, he had done some grounds-keeping work in 2010, for which he was paid cash, and he had received a legal settlement of approximately $13,000.00 at some point prior to his arrest. *Id.* at 29-31, 149. The State presented testimony that the evidence discovered at Hawkins's residence was consistent with someone who was selling marijuana. *Id.* at 85. Although the trial court was permitted to draw an adverse inference from Hawkins's refusal to testify at the trial, additional evidence was required to show that the Vehicles were purchased with money that is traceable as a proceed of a violation of a criminal statute. We do not believe that the State presented sufficient evidence to demonstrate that the Vehicles were purchased with money traceable to selling marijuana and not with legitimate funds.

Additionally, the trial court found that there was insufficient evidence that Hawkins was the legal owner of the Vehicles. Although Hawkins had not transferred title to the

6

Vehicles to his name, he had possession of the titles to both of the Vehicles and produced them as exhibits as trial.  He also had actual possession of both of the Vehicles at the time of the seizure as they were parked in the driveway and near the curb in front of his residence.  Even though Hawkins testified that he purchased the Avalanche as an employee of The Car Concierge, the evidence showed that The Car Concierge was no longer in business as the time of the purchase.  *Id*. at 30, 49.  Hawkins testified that he personally purchased the El Camino and not as an employee of The Car Concierge.  *Id*. at 44.  We conclude that there was sufficient evidence to show that Hawkins was the legal owner of the Vehicles.  We, therefore, reverse the trial court's grant of forfeiture of the Vehicles.

Reversed.

FRIEDLANDER, J., and BAILEY, J., concur.