## I. DUFFEY & SON COMPANY *v.* KEMMER ET AL.

[No. 16,622. Filed November 14, 1941. Petition for leave to file petition for rehearing denied December 11, 1941.]

*Raymond Brooks,* of North Manchester, and *Condo, Van Atta, Batton & Harker,* of Marion, for appellant.

*Milo Feightner, Lee M. Bowers,* and *Arthur J. Palmer,* all of Huntington, and *John R. Browne,* of Marion, for appellees.

STEVENSON, J.—The appellees, R. V. Kemmer and John Minton, filed a petition with the Department of Commerce and Industries, Live Stock License Division, of the State of Indiana, for a certificate of public convenience and necessity, authorizing the operation of a concentration point at Huntington, Indiana. A hearing was had upon this petition and a certificate was issued.

The appellant appealed from this order of the Live Stock License Division to the Huntington Circuit Court, and, on change of venue, the matter was finally tried before the court in Grant County. The Grant Circuit Court confirmed the action of the Live Stock License Division and the certificate of convenience and necessity was granted and ordered issued.

A motion for new trial was filed and overruled, and this appeal has been perfected. The only error assigned in this court is the alleged error in overruling the appellant's motion for a new trial. Under this assignment of error, the appellant challenges the sufficiency of the evidence to sustain the decision of the court, and also charges that the court erred in the exclusion of certain testimony.

The statute, under which this proceeding was instituted, reads, in part, as follows:

"No buyer as defined in this act shall engage, continue or permit another in his or its employ to engage or continue, in the business of the buying of live stock within this state, until after there

shall have been obtained from the administrative officer by written application, a separate certificate for each separate concentration point to be operated by such buyer, declaring that public convenience and necessity require the operation of the business of buying live stock by such person, and no certificate shall be issued except as hereinafter provided, until after a public hearing and a consideration of the service rendered by other buyers, concentration points, and stock-yards doing business in the territory applied for in said application for a certificate."  § 42-916, Burns' 1940 Replacement.

The appellant contends that the evidence fails to show that public convenience and necessity require the operation of the business of buying livestock in the Huntington area.  The appellant admits, however, that the evidence does disclose some convenience to a few farmers living in close proximity to the City of Huntington, which will be afforded by the establishment of a concentration point.

The record in this case discloses that the appellees were not seeking permission to engage in the business of buying livestock only; they were seeking permission to establish a concentration point at Huntington, Indiana.  The statute defines concentration point as follows:

"(c)  The words 'concentration point' whenever used in this act, shall be construed to mean any stockyards, community sale, auction, place, establishment or facility, where any series of sales, exchanges or purchases of any live stock, is made at regular or irregular intervals at an established place or places, in this state, by any person directly or indirectly, for or on account of the producer or consignor thereof, except that this term shall not apply to sales, purchases or exchanges, at a stockyards which is posted as a stockyards by the secretary of agriculture of the United States of America, as defined herein."  § 42-911, Burns' 1940 Replacement.

The record discloses that these appellees were asking permission to engage in the business of "buying and selling live stock." By this the appellees meant not only the buying of the products of the farms in the immediate vicinity of Huntington and reselling it on other markets, but they also contemplated the purchase of feeding cattle and lambs from other states, for the purpose of reselling to feeders in the immediate community.

It also appears from the record that the nearest concentration point to that of the proposed location at Huntington was at Markle, ten miles away. There were other concentration points at places farther removed from Huntington, but many of them did not deal in the buying and selling of lambs and cattle.

Whether or not the services rendered by the concentration points already established in Huntington County and the counties adjoining were reasonably adequate to meet the public needs, was a question of fact for the administrative officer of the Live Stock License Division and the trial court to determine. *Penn. Greyhound Lines* v. *Public Service Comm.* (1940), 217 Ind. 221, 27 N. E. (2d) 348; *Application of Calhoun* (1937), 51 Wyo. 448, 68 P. (2d) 591.

Both the administrative officer of the Live Stock License Division and the trial court, after hearing the evidence, concluded that public convenience and necessity require the operation of a concentration point in the Huntington area. There is evidence in the record which tends to support this finding. Such finding will, accordingly, not be disturbed on appeal. *Mid-Continent Petroleum Corp.* v. *Starnes* (1937), 104 Ind. App. 190, 8 N. E. (2d) 411; *Great Atlantic and Pacific Tea Co.* v. *Custin* (1938), 214 Ind. 54, 13 N. E. (2d) 542.

The appellant next contends that the court erred in excluding the testimony of Ike Duffey. This witness was asked this question:

"I will ask you whether or not there is a sufficient supply of cattle in the Huntington County area to make up carload lots for reshipment within any reasonable length of time?"

To this question, the appellees objected, "for the reason that the question is leading, suggestive, and asks for the opinion of a witness on a subject not in issue here."

The appellant then offered to prove that, if the witness were permitted to answer the question, he would testify that the supply of cattle in the Huntington area was so small that no buyer of cattle could buy a sufficient quantity of cattle to make carload lots for economical shipment. The court sustained the objection to the question and this ruling is assigned as error.

The appellant does not point out in his brief wherein the exclusion of this particular evidence was harmful to him, and while it appears to us that the question might have been proper, yet, before the exclusion of such offered testimony may be considered as reversible error, it must be made to appear to this court that the appellant was harmed by such ruling.

From a consideration of all the evidence, it is not apparent to us that the finding of the court would have been different had the witness been permitted to answer the question to which objection was sustained. Whether there were sufficient cattle in the vicinity to make up carload lots for shipment at regular intervals was not determinative of the issue. The burden is on the appellant to show that he was harmed by this ruling. This he has failed to do. The exclusion of the testimony, therefore, although perhaps

erroneous, was not reversible error. *Kreighbaum* v. *Dinsmore* (1929), 88 Ind. App. 693, 165 N. E. 526.

Error is also assigned in refusing to permit a witness, called as an expert, to testify as to the effect of the location of additional livestock buying points in a community which already has an adequate number. As we have heretofore said, the appellees were seeking more than the mere privilege of establishing a buying point. Conceding that the question and the answer sought were proper for the court's consideration, yet, it does not appear to us that such matter is determinative of the issue. There was, accordingly, no reversible error in the exclusion of this offered testimony.

Finding no reversible error, the judgment of the trial court is affirmed.

Judgment affirmed.

NOTE.—Reported in 37 N. E. (2d) 274.