Franklin C. DEAN and Edna C. Dean, Appellants (Plaintiffs Below),

v.

INSURANCE COMPANY OF NORTH AMERICA, Appellee (Defendant Below).

No. 4–382A53.

Court of Appeals of Indiana, Fourth District.

Sept. 21, 1983.

Frank E. Spencer, Indianapolis, for appellants.

Keith C. Reese, Robert C. Wolf, Rocap, Rocap, Reese & Young, Indianapolis, for appellee.

MILLER, Judge.

Plaintiffs-appellants Franklin C. and Edna C. Dean sued to recover the proceeds of a fire insurance policy issued by defendant-appellee Insurance Company of North America (INA) and punitive damages for INA's refusal to pay. The policy in question covered the Deans' northside Indianapolis home, which was substantially damaged by fire January 2, 1977. The jury, apparently accepting INA's defense of arson, found in its favor and against the Deans. The Deans now raise several issues for our consideration and, for the reasons stated below, we affirm.

### ISSUES

The Deans claim the trial court erred during the course of trial:

(1) in refusing to allow the Deans to bring forth evidence regarding criminal charges (alleging the Deans filed a false proof of loss with INA) which were later dismissed;

(2) in removing the issue of punitive damages from the jury;

(3) in admitting into evidence a report prepared by an investigator from the Washington Township Fire Department which report contained derogatory information, revealed by Dean's ex-wife, regarding a fire at Franklin Dean's former home.

The Deans further claim the jury's verdict was contrary to law, insisting INA failed to sustain its burden of proof on the arson issue.

### FACTS

The events leading to the Deans' discovery of the fire were related by Franklin Dean at trial. According to Dean, he, his wife and son attended an auto show at the Indiana State Fairgrounds with friends on the evening of January 1, 1977. After leaving the auto show, the group went to the friends' home, located several blocks from the Deans', where they played cards until 4 A.M. Shortly thereafter, the Deans departed, leaving their son to spend the night with their friends' son. After leaving their friends' home, the couple went to a restaurant some two to three miles distant, and stayed there about 20 to 30 minutes eating breakfast. They then left for home. However, their return was somewhat delayed because, as they followed the route homeward, Mrs. Dean saw a pair of hitchhikers and, noting the temperature was near zero, asked Dean to stop and give them a lift. According to Dean, the hitchhikers told him they were headed for Noblesville and he undertook to drive them there, with the round trip to and from Noblesville taking about one hour. Dean testified he and his wife arrived home between 6:30 and 7:00 A.M., at which time they saw smoke rising from the eaves of the house. They immediately awoke neighbors and used their phone

to call the fire department, which arrived some three to four minutes later.

After the firemen had left the scene, Dean called Mrs. Joyce Bilbee Griffith, from whom the Deans were buying the home on contract. Mrs. Griffith notified her insurance agent of the fire,[1] and the agent then contacted the Deans, telling them to get a motel room for the night and informing them an INA adjuster would visit the following day. After speaking with the adjuster, the Deans filed proofs of loss estimating damage to the structure in the amount of $33,995.65 and loss of contents at $18,078.50.

INA refused payment for the loss however, after investigators from the State Fire Marshal's office determined arson to be the cause of the blaze. Gasoline residue was discovered in two of three samples taken from debris in the home and burn patterns established the fire had been induced by accelerants. After INA refused to pay, the Deans brought the instant suit to recover the policy proceeds, asking for an additional $100,000 as a punitive award.

At trial, Dean testified he had locked the front door before leaving for the auto show and had placed a chair in front of the back door. After the fire, the chair was still in place blocking the back door and neither Dean nor the fire investigators observed any sign of forcible entry into the Deans' home. Testimony disclosed there had been several previous fires of suspicious origin in the Ravenswood area where the Deans' home was located and that a number of persons who had experienced fires were acquaintances or friends of Dean. The evidence also revealed the Deans had been trying unsuccessfully to sell their home for some time, and had experienced problems with a broken sewer pipe which had caused sewage to back up under the residence. Dean testified he had the faulty pipe replaced and said he did not know of any sewage under the home. He also testified he had purposefully removed his house from the market after a realtor brought a black

1. Mrs. Griffith, as titleholder and contract seller, was listed as a co-insured under the policy.

family to look at the house, as he feared a black buyer would face reprisals from neighbors.

For the defense, Terry Davis, a Washington Township fire fighter, testified he observed a broken pipe with a garbage bag wrapped around it under the Deans' home and saw a large amount of sewage in the crawl space. Barker Davie, a forensic chemist hired by the State Fire Marshal's Office, testified he found leaded gasoline residue in his analysis of samples of debris taken from the Deans' home. James Skaggs, chief of the State Fire Marshal's Investigation Division, said he concluded the fire was incendiary after examining burn patterns which showed accelerants had been spread on the floor. Skaggs also testified regarding the sewage in the crawl space and stated that after his investigation, the arson suspect he could not eliminate was Dean, as there were no signs of burglary, Dean was the last person to leave the home, and he stood the most to profit from the fire. Dewitt Keeler, a consulting engineer, testified his examination of the Deans' furnace revealed that it had not been the cause of the fire, as suggested by Dean during his testimony.

*Issue One—Evidence of Criminal Charges*

The Deans assert they were denied a fair trial when the trial judge refused to allow them to present evidence regarding criminal charges filed against them in connection with the fire. Upon the recommendation of the State Fire Marshal, the Deans were arrested and charged with perjury for filing a false proof of loss (excessive damages) with INA, which charges were later dismissed. Deans' counsel attempted to refer to the criminal matter during his opening statement and attempted to question Franklin Dean in this regard, arguing at the time, and now on appeal, it was relevant to the issue of punitive damages as it showed oppressive conduct on the part of INA. INA objected, asserting the State Fire Marshal, not INA, was responsible for the filing of the criminal charges. It also argued the injection of the criminal matter into the trial would only serve to confuse

the jury. The trial court excluded discussion of the charges in the opening statement and refused to allow Dean to testify regarding the criminal matter.

■ After examining the record, we conclude the Deans waived this issue by failing to make a formal offer to prove establishing relevancy, a procedure which has been established by our case law as a prerequisite, in situations such as this, to appealing the rejection of evidence. First, we note that the disputed refusal occurred when Dean revealed that, after the fire, he had been called to a firehouse for a hearing during which an INA insurance investigator asked most of the questions. He was then asked, "Okay, and what happened after that?" (R. 424) whereupon the objection was made that the information being solicited (the perjury arrests) was outside the issues. When the objection was sustained, Deans' counsel made no formal offer of proof as to what Dean's answer would have been, if permitted. Thus, the issue is clouded by the lack of an offer to prove which, pursuant to Ind.Rules of Procedure, Trial Rule 43(C), would have given the substance of the disputed testimony and, properly, a revelation of other testimony and evidence counsel was prepared to submit, all of which would have established the relevancy of this line of questioning. By failing to make such an offer, the Deans waived any alleged error in the refusal of Dean's testimony. *Chuck Callahan Ford, Inc. v. Watson,* (1982) Ind.App., 443 N.E.2d 79; *Elliott v. Roach,* (1980) Ind.App., 409 N.E.2d 661; *Carroll v. Ely,* (1980) Ind.App., 398 N.E.2d 1364.

The record does disclose however, that an informal discussion was held at that time outside the presence of the jury during which the court was informed of the Deans' meeting with fire officials and an INA investigator. During the meeting, the INA investigator asked most of the questions (whether the questions dealt with the cause of the fire or with the amount of the Deans' claim or both was not disclosed to the court). It was also revealed that the Deans were later charged with perjury and these

charges were dismissed. Even giving the Deans every benefit of the doubt by considering the foregoing disclosures as an offer to prove, we are convinced that this bare evidence, standing alone, did not establish relevancy as there was no other evidence presented indicating that INA had any influence on the initiation of the criminal proceedings. Thus, without more, it would have been purely conjecture on the trier of fact's part to determine what role, if any, INA played in the arrest.[2]

■ Additionally, we note the Deans have the burden to show they were harmed by any alleged error in the exclusion of the testimony. *I. Duffey & Son Co. v. Kemmer,* (1941) 110 Ind.App. 116, 37 N.E.2d 274. In light of the fact that no harm from the exclusion of evidence relating to punitive damages, which require a prerequisite of actual damage. *See Hahn v. Ford Motor Co.,* (1982) Ind.App., 434 N.E.2d 943; *Large v. Gregory,* (1981) Ind.App., 417 N.E.2d 1160.

*Issue Two—Removal of Punitive Damages from Jury*

■ Although their argument is somewhat unclear, the Deans' also apparently claim error in the court's removal of the issue of punitive damages from the jury. However, we conclude this issue was likewise waived. The record before us discloses that at the close of trial, the trial court instructed the jury, *without objection,* that it was to "disregard the question and consideration of punitive damages in this case." (R. 233) Trial counsel for the Deans acknowledged the lack of a recorded objection to the instruction in an affidavit filed with the motion to correct errors, wherein he stated:

"although the record of the Court at this time, and the partial recordings made by the Reporter of said Court, do not show and include the objection of this Affiant, concerning the taking of the issue of punitive damages from the Jury, by modification of the Court's Preliminary Instruction No. 2 when the same was read as a final instruction, this Affiant did object thereto and did not consent to the taking of that issue from the Jury. Affiant further says that when the Judge had already indicated, prior to the commencement of the prior recording by the Reporter, that he was going to take that issue from the Jury, and then, while the Reporter was recording the statement of the Judge that he would insert the modification in the STATEMENT OF FACTS, the Preliminary Instruction No. 2, this Affiant, in stating that 'I'm not objecting to that' had reference to the wording of the modification and was not withdrawing his opposition, already stated, to withdrawing that issue from the Jury—the wording proposed was consistent with the ruling already made by the Court."

We observe the Deans made no effort to modify the record pursuant to Ind.Rules of Procedure, Appellate Rule 7.2. Our case law dictates that the trial court record is accorded absolute verity and may not be modified by post-trial affidavits. *Indiana & Michigan Electric Co. v. Pounds,* (1981) Ind.App., 428 N.E.2d 108; *Koeneman v. Aldridge,* (1954) 125 Ind.App. 176, 122 N.E.2d 345. Further, we note that, while the affidavit asserts an unrecorded objection by the Deans' counsel, it contains no clue as to the nature of the purported objection.

Thus, in view of the fact the Deans have neither sought to amend the trial court record nor set forth the verbatim objection made to the amended instruction, and taking into account their failure to cite legal authorities on this point, we find they waived any issue relating to the applicability of punitive damages. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); *Gemmer v. Anthony Wayne Bank,* (1979) Ind.App., 391 N.E.2d 1185; *Long v. Johnson,* (1978) 177 Ind.App. 663, 381 N.E.2d 93.

---

**2.** The Deans concede the evidence is somewhat speculative, arguing "when evidence has a tendency to prove a fact it is admissible even though its weight is slight." (Appellant's Brief, p. 18.)

*Issue Three—Hearsay Evidence*

■ The Deans assert the trial court erred in admitting certain testimony under the business records exception to the hearsay rule. The disputed evidence was admitted during the testimony of Robert Wisehart, a firefighter and arson investigator with the Washington Township Fire Department in Indianapolis. Wisehart testified that, in connection with his investigation of a fire at 1407 Randall Road and after certain witnesses had mentioned Franklin Dean's name, he interviewed one Patricia Snodgrass who claimed to be Deans' ex-wife. INA then began questioning Wisehart about the date of the interview, apparently to lay a foundation for the introduction of a portion of Wisehart's investigation report which contained statements made to him by Snodgrass. The Deans interposed an objection to Wisehart's testimony on the basis of the hearsay rule. The jury was removed and argument was held on the admissibility of that part of the report containing Snodgrass' interview (Exhibit G), after which the trial court judge indicated he was going to let Wisehart testify as to the official records of the Washington Township Fire Department if Wisehart was the keeper or maker of those records. The jury returned and the following questioning ensued:

[CONTINUED DIRECT EXAMINATION BY MR. DIETZ (Counsel for INA)]:

Q. I hand you what has been previously marked as Defendant's Exhibit G and ask if you can identify that?

[WISEHART]: Yes record from interview with Patricia Snodgrass.

MR. HENRY [COUNSEL FOR DEANS]: May I ask a preliminary question?

THE COURT: You may.

PRELIMINARY QUESTIONS BY MR. HENRY:

Q. Is that an official record?

A. Yes.

Q. That is part of your records?

A. Yes.

CONTINUED DIRECT EXAMINATION BY MR. DIETZ:

Q. Was this record compiled by law?

A. Yes sir.

Q. Was it made after an interview with Patricia Snodgrass?

A. Yes.

Q. Was it made under your supervision and direction?

A. Yes.

Q. Do you recall when it was made?

A. Fall of 1974.

THE COURT: Any objections

MR. HENRY: *No objections*

THE COURT: Admitted.

MR. DIETZ: Mr. Wisehart, will you please read Defendant's Exhibit G? (R. 595–96) (Emphasis added.)

After trial, Deans' counsel filed an affidavit which stated, in pertinent part:

"Affiant further states that when [Wisehart's report] was the subject of examination by [counsel for INA] and this Affiant had already objected that anything said by Patricia Snodgrass should be testified by her, and that otherwise it was hearsay, and the Court had already ruled that he was going to let it in under the exception to the hearsay rule as to official records, when the Court then asked 'Any objections', and this Affiant stated 'No objections', he was stating that he did not have any objections other than what he had already stated and the Judge had already ruled upon. Thus affiant did not withdraw his already-stated hearsay objection."

INA moved to strike the affidavit, arguing that it set forth no facts or allegations of omissions in reporting but "merely recites mental impressions of what he meant to do at trial but failed to do, leaving the undersigned in a difficult situation of being unable to controvert under oath [Deans' counsel's] keen mental processes." (R. 286)

We agree with INA. Although Snodgrass' observations to Wisehart were part of an investigator's report which was established as an official record kept in the ordinary course of business, yet they were hearsay and the official record containing such

admissions was inadmissible if properly objected to, *see State v. Edgman,* (1983) Ind. App., 447 N.E.2d 1091.[3] However, our case law instructs that a proper specific objection must be made when evidence is offered in order to preserve a question regarding its admission. *City of Indianapolis v. Parker,* (1981) Ind.App., 427 N.E.2d 456; *Indiana Tri-City Plaza Bowl, Inc. v. Glueck's Estate,* (1981) Ind.App., 422 N.E.2d 670. Here, while the Deans objected on hearsay grounds when the preliminary foundational testimony was being offered, the fact remains that after argument on the issue, further testimony to establish the foundation for the exhibit's admission, and INA's formal offer of Exhibit G, Deans' counsel stated he had no objections to the admission of the exhibit. It is incumbent upon trial counsel, when an exhibit is finally offered, to indicate clearly to the court his objections to its admission. *Department of Public Welfare v. Chapel Pharmacy, Inc.,* (1980) Ind.App., 407 N.E.2d 1211. In the situation before us, counsel's response that he had no objections to the exhibit was clear and unambiguous and could not have been interpreted by the trial judge as a challenge to its propriety. The post-trial affidavit which sought to offer an explanation for counsel's failure to object at trial was insufficient to impeach the record, which is accorded absolute verity on appeal. *Indiana & Michigan Electric Co. v. Pounds, supra; Koeneman v. Aldridge, supra; Satterblom v. Wasson,* (1942) 111 Ind.App. 377, 41 N.E.2d 674. Accordingly, the Deans have preserved no error in this regard.

*Issue Four—Judgment Contrary to Law*

■ The Deans attack the judgment as contrary to law. Thus, in order to succeed on appeal they must establish the evidence is without conflict and leads to but one conclusion, opposite to that reached by the trial court. *Board of Commissioners of Cass County v. Nevitt,* (1983) Ind.App., 448 N.E.2d 333; *Spurlock v. Fayette Federal Savings & Loan Association,* (1982) Ind. App., 436 N.E.2d 811. In reviewing the Deans' allegation, this court will not weigh the evidence or determine the credibility of the witnesses, but will consider only evidence on the record which supports the judgment, along with the reasonable inferences to be drawn therefrom. *Plan-Tec, Inc. v. Wiggins,* (1983) Ind.App., 443 N.E.2d 1212; *Board of Commissioners of Cass County v. Nevitt, supra.*

The Deans' entire argument on this issue appears in their appeal brief as follows:

"In conclusion it is submitted that the verdict of the Jury is contrary to law, being contrary to the applicable principals [sic] of law as well as the evidence.

*Clark v. Corbly* (1953), 123 Ind.App. 438, 110 N.E.2d 309. The evidence showed the existence of the policy of insurance, the damages which Plaintiffs had sustained, unreimbursed, and no substantial evidence of probative value that the Plaintiff was guilty of arson so that the policy was breached by him—as to which the Defendant had the burden of proof, as a defense.

Trial Brief of Defendant, R. pp. 219–221, and cases there cited."

(Appellant's Brief, p. 25.)

Reviewing this issue, we first agree as claimed by the Deans, that they presented prima facie evidence entitling them to relief absent evidence that they themselves started the fire. The insurance contract was established, as were the fire and damages. On the other hand, INA defends the verdict, and we think correctly, on the basis

---

**3.** In *Edgman,* we concluded that while personal observations of the investigator contained in his report were admissible, information he gleaned from third parties was not. In the case at bar, the investigative report read as follows:

"Patricia M. (Dean) Snodgrass F/W/30, 3009 E. Michigan St., Indianapolis, Indiana, Telephone No. 631–0690 Was married to Frank Dean on May 12, 1972 and divorced November 16, 1973. Patty stated that in the house on Evanston Ave., 6650 (?), supposedly was hired out by Frank to be burnt. Patty stated that Frank did have a motorcycle that was burned somewhat and he was going to turn it in to his insurance company, but blackened it with a torch to make it look worse than it really was then cleaned it up and resold it." The observations in the report were obviously not Wisehart's, but instead were those of Snodgrass.

that evidence was presented from which it could be inferred that arson was committed by the Deans. Thus, in order to resolve the issue, we must examine the evidence presented and determine if INA sustained its burden of proving the affirmative defense of arson by the insureds.

First, case law instructs that an insurer raising an arson defense must establish the truth of its claim of wilful burning by the insured by a preponderance of the evidence. *Continental Insurance Co. v. Jachnichen,* (1887) 110 Ind. 59, 10 N.E. 636; *Godwin v. Farmer's Insurance Group,* (App. 1981) 129 Ariz. 416, 631 P.2d 571; *Rist v. Commercial Union Insurance Co.,* (1979) La., 376 So.2d 113. With regard to the incendiary nature of the fire, we have no problem in finding there was present ample evidence to establish such origin from the testimony of Barkie Davie and James Skaggs, both of whom worked on the fire investigation. Only remaining is the question of whether the evidence was sufficient to establish the Deans' culpability.

Although the Deans, as can be seen from a reading of their entire argument on this subject above-quoted, have not benefited us with a discussion of the evidence and explanations as to why they feel it was not sufficient to establish arson on their part, we find from an examination of the evidence that the jury's verdict can be sustained. In sustaining its burden of proof, by a preponderance of the evidence, of arson by the insured, INA was entitled to rely on circumstantial evidence "if the inferences are not so remote and all circumstances, including the inferences, are of sufficient force to bring minds of ordinary intelligence to a persuasion of incendiarism by a fair preponderance of the evidence." *Appleman on Insurance 2d* § 12682 at pp. 89–90; *see Hoosier Insurance Co., Inc. v. Mangino,* (1981) Ind.App., 419 N.E.2d 978.

As an aid to determining whether evidence here provided the necessary inferences to establish the affirmative defense of arson, we find the recent case of *Cora Pub, Inc. v. Continental Casualty Co.,* (5th Cir. 1980) 619 F.2d 482, most informative. In that case, the circuit court reversed the district court's granting of a directed verdict for the plaintiff. The insurance company had established that the door to the burned restaurant was unlocked when the firemen arrived; the building alarm had been disconnected; the business records were removed, and the fire was of an incendiary origin. Also established was the fact that the plaintiff's business was operated at a loss and heavily in debt. The circuit court, in finding the reasonable inferences of arson, said:

Though the case for arson is wholly circumstantial, we cannot deny that reasonable men might draw the inferences necessary for Continental's arson defense. In a host of similar cases where sufficient motive and opportunity of the insured to commit arson were combined with proof of an incendiary cause of fire, this court and others have considered the arson defense to be supportable by inference. *Sullivan v. American Motorists Ins. Co.,* 605 F.2d 169 (5th Cir.1979); *Crown Colony Distributors, Inc. v. United States Fire Ins. Co.,* 510 F.2d 544 (5th Cir.1975); *Hanover Fire Ins. Co. of New York v. Argo,* 251 F.2d 80 (5th Cir.1958); *Don Burton, Inc. v. Aetna Life & Cas. Co.,* 575 F.2d 702 (9th Cir.1978); *Stein v. Girard Ins. of Philadelphia,* 259 F.2d 764 (7th Cir.1958).

Cora Pub contends, however, that the evidence of arson in this case is worse than merely circumstantial. It characterizes Continental's arson defense as built on an impermissible pyramiding of inferences.

The rule against inferences upon inferences is frequently overstated as absolutely prohibiting the drawing of one inference from another. Behind the rule is the thought that unless the first inference is certain, the improbability of the second inference is compounded. Consistently enforced, however, the rule would make proof by circumstantial evidence virtually impossible, since most generally accepted inferences may be dissected into intermediate inferences. Like Achilles of

Zeno's paradox, we might never reach a conclusion. . . .

\* \* \* \* \* \*

While it is routinely said in criminal cases that guilt may not be proven by inference upon inference, e.g., *United States v. Aguiar,* 610 F.2d 1296, 1304 (5th Cir.1980), the practice in civil cases is to evaluate the probative value of every inference on its own merits. The modern view of the rule against inference upon inference was well summarized by Judge Wisdom in *NLRB v. Camco, Inc.,* 340 F.2d 803, 811 (5th Cir.1965).

> The so-called rule against pyramiding inferences, if there really is such a 'rule' and if it is anything more than an empty pejorative, is simply legalese fustian to cover a clumsy exclusion of evidence having little or no probative value.

See also *Smith v. General Motors Corp.,* 227 F.2d 210, 213 (5th Cir.1955); *Alman Bros. Farms & Feed Mill, Inc. v. Diamond Lab, Inc.,* 437 F.2d 1295 (5th Cir.1971).

In the case before us, as in most arson cases, the incendiary origin of the fire was proved by circumstantial evidence, including the rapidity with which the building was observed to burn, the lack of any discoverable accidental cause of fire where the fire began, and the suspicious activity of the unidentified man seen at the restaurant immediately after the fire began. To reach the ultimate hypothesis sought to be proved requires another inference, joining the fact of the corporation's motive to commit arson with the opportunity of one of its principal figures, to arrive at the conclusion that Cora Pub intentionally destroyed the building.

There is nothing inherently wrong with this method of proof. The same series of inferences was necessarily followed in *Sullivan v. American Motorists Ins. Co., supra,* and *Crown Colony Distributors, Inc. v. United States Fire Insurance Co., supra.* The important question is whether the inference is reasonably well supported by the evidence. We must judge the inference as we would any other, taking into consideration that its probability may be attenuated by each underlying inference. Having examined the record carefully, we find the evidence sufficient to create an issue for the jury. 619 F.2d at 485–86.

Returning to the facts before us, we find, as noted earlier, substantial evidence that the fire was caused by arson. Barker Davie, a forensic chemist who analyzed samples of debris taken from the home, and James Skaggs, an investigator from the State Fire Marshal's Office, testified the fire was clearly incendiary in nature. As for motive, testimony at trial revealed Franklin Dean was disabled and had offered the home for sale for a long period of time without success. He and his wife had expressed their desire to sell the residence so that they might buy land in an outlying area of the county. Although disputed by the Deans, fire investigators testified the home had a broken sewer pipe and standing sewage in its crawl space. Further, the home was located in a neighborhood designated as a flood area, which had experienced a number of suspicious fires.

The evidence also showed the Deans had opportunity to set the blaze. They had left their friends' home some two-and-one-half hours before the fire was discovered, and while they stated they had spent the intervening hours eating breakfast and aiding hitchhikers, the jury could have disbelieved their explanation as to their whereabouts after considering the evidence relating to their motives. Dean also testified he had locked the home and there were no signs of forced entry to the dwelling, which information could have led the jury to conclude the arsonist had a key. Further, he and his wife were present at the fire scene and were the first to observe the fire.[4]

Our research discloses a number of cases where circumstances similar to those in the case at bar were deemed sufficient to sustain the affirmative defense of arson by the

---

4. In his brief, Deans' counsel argues the evidence was insufficient to show Edna Dean committed the arson. We note, however, that the evidence presented regarding motive and opportunity applied equally to Mrs. Dean.

insured; *Weed v. American Home Assurance Co.,* (1982) 91 A.D.2d 750, 458 N.Y.S.2d 27 (origin of fire was incendiary in nature; property (a tavern) was for sale and no offers to purchase had been made for three-month period before fire; business had sustained financial loss and insured and another were last ones to leave building, about one hour before the fire); *Godwin v. Farmer's Insurance Group, supra,* (fire investigators concluded blaze was incendiary; insured was at scene of fire and all entrances to home were locked prior to fire; insured had been trying unsuccessfully to sell the home and due to zoning restrictions, would have recovered substantially more from fire insurance than from sale of dwelling; insured was in financial difficulty); *Rist v. Commercial Union Ins. Co., supra* (fire was incendiary in origin; insured had been unsuccessful in attempts to sell house and was in bad financial straits; insured had recently procured insurance and had moved new furniture out of home shortly before fire; insured and girlfriend made conflicting statements as to insured's whereabouts at time fire started); *Lawson v. State Farm Fire & Casualty Ins. Co.,* (1978) 41 Colo. App. 362, 585 P.2d 318 (fire in shop resulted from pouring of accelerant; insured and his wife had only keys for locks to premises and access was secure when fireman arrived; insured's and wife's statements as to their whereabouts indicated they might have been able to have started fire; insured had unsuccessfully tried to sell business and was in financial distress at time of fire); *Quast v. Prudential Property & Casualty Co.,* (1978) Minn., 267 N.W.2d 493 (accelerant used to start fire; insured was in financial difficulty and had been unsuccessfully trying to sell home; insured claimed to have locked all doors and left for bar three hours before fire started); *Gregory's Continental Coiffures & Boutique, Inc. v. St. Paul Fire & Marine Ins. Co.,* (7th Cir.1976) 536 F.2d 1187 (plastic drums containing gasoline found on premises and insured had recently purchased similar drums; premises were secured prior to fire and no signs of forced entry, insured in "very shaky" financial condition). Having viewed the evidence in this cause and the law applicable thereto,

we find there was circumstantial evidence from which the jury could have concluded the Deans set the fire in question. Accordingly, the verdict was not contrary to law.

We affirm.

CONOVER, P.J., and YOUNG, J., concur.