**John SEXSON, Plaintiff–Appellant,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Defendant–Appellee.**

No. 02–3382.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 2003.

Decided March 12, 2003.

Before BAUER, RIPPLE, and EVANS, Circuit Judges.

ORDER

After a fire destroyed property owned by John Sexson and insured by State Farm Fire and Casualty Company ("State Farm"), State Farm refused to cover the loss on the ground that the cause of the fire was arson. Mr. Sexson then sued State Farm; he alleged a breach of contract claim and a bad faith tort claim in which Mr. Sexson sought punitive damages. The district court granted summary judgment to State Farm on the bad faith claim; at a subsequent jury trial, Mr. Sexson prevailed on the breach of contract claim. Mr. Sexson now appeals the district court's grant of summary judgment to State Farm on the bad faith tort claim. For the reasons set forth in this order, we affirm the judgment of the district court.

1.

On June 19, 2000, a fire occurred at a rental property at 4533 North Payton Avenue in Lawrence (Indianapolis), Indiana. Mr. Sexson owned the property, which was insured by State Farm. The insurance policy provides, "If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other insured for this loss." R. 30 at 8, ¶ 14 (bold in original).

The fire department conducted an investigation and suspected arson. Upon entering the building to fight the fire, the firefighters found newspaper, melted plastic, and cloth debris on the top of the stove. The fire department tested the debris and two of the burners and found the presence of gasoline on the left rear burner.

Thereafter, State Farm retained Donan Engineering Co. ("Donan") to investigate the fire. Donan concluded that the fire was incendiary, that it originated on a range top in the kitchen, and that it was started by paper products being ignited by heat produced by the electric burners on the range. When State Farm's investigator, Aimee Macaluso, inspected the stove top, which had been locked in an evidence storage room, the right two burner knobs were in the "High" position, and the two

left burner switches were in the "Off" position.

Macaluso then spoke with Indiana Power and Light ("IPL") and learned that the electricity to the rental property had been disconnected on June 14, 2000, but that on June 16, 2000, Mr. Sexson had called IPL to have the bill put in his name and ordered that the electricity be reconnected on June 19, 2000 (the date of the fire). For at least one year prior to the fire, Mr. Sexson had been trying to sell the property.

Just prior to the incident, the renters of the property, Neil and Sonya Rumer, had told Mr. Sexson that they could no longer afford the rent and that they were vacating the premises. The Rumers returned to retrieve some personal property on three occasions, but did not enter the house on the third occasion. Mr. Sexson also entered the property after the Rumers moved out and retrieved some of the Rumers' personalty to hold in order to ensure payment of back rent. He had the lock on the front door changed and put a chair against the door knob of the back door. Mr. Sexson and the Rumers met briefly on June 16, 2000, at the property. On that day, the Rumers were taking their personalty from the garage. Mr. Sexson then arrived at the property, and the Rumers immediately drove away. Mr. Sexson then entered the house, locked it up and left. As noted, on that date, he also called IPL and arranged to have the electricity reconnected on June 19. On June 19, 2000, Mr. Sexson received a call from a neighbor that the property was on fire.

At the conclusion of its investigation, State Farm determined that Mr. Sexson caused the fire at his rental property and that the fire was incendiary in its origin. Consequently, State Farm denied Mr. Sexson's claim on December 18, 2000.

### 2.

The district court granted summary judgment to State Farm on Mr. Sexson's bad faith claim. It noted that Indiana law permits an insurer to dispute a claim as long as it does so in good faith. The district court concluded that Mr. Sexson had "not presented any evidence to show that this is something more than a good faith dispute over the validity of his claim. State Farm clearly has sufficient evidence to dispute the validity of Sexson's claim." R.51 at 12. Moreover, the district court found that Mr. Sexson had completely failed to show the requisite "malice or oppressiveness" necessary to entitle Mr. Sexson to punitive damages. *Id.*

In granting this motion for summary judgment on the bad faith claim, the district court refused to consider an additional statement of material fact proffered by Mr. Sexson that quoted nearly verbatim Mr. Sexson's supplemental affidavit. The district court determined that Mr. Sexson [did] not have any basis for asserting personal knowledge" for the affidavit. *Id.* at 3 n. 2.

Mr. Sexson's breach of contract claim went to trial and a jury returned a verdict in Mr. Sexson's favor. After the court entered judgment on all claims, Mr. Sexson appealed the district court's granting of State Farm's motion for summary judgment on the bad faith claim for punitive damages.

### 3.

On appeal, Mr. Sexson submits that the district court erred in failing to consider the affidavit and that there was a genuine issue of material fact on Mr. Sexson's bad faith claim. We review for an abuse of discretion the district court's refusal to consider the affidavit. *Adusumilli v. City*

*of Chicago,* 164 F.3d 353, 359 (7th Cir. 1998). We review the grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party, here Mr. Sexson. *See Mateu–Anderegg v. Sch. Dist. of Whitefish Bay,* 304 F.3d 618, 623 (7th Cir.2002).

Under Federal Rule of Civil Procedure 56(e), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). "On a motion for summary judgment, a court *must not* consider those parts of an affidavit that are insufficient under Rule 56(e)." *Adusumilli,* 164 F.3d at 359 (emphasis added); *Friedel v. City of Madison,* 832 F.2d 965, 970 (7th Cir.1987) ("To the extent that affidavits are insufficient under Rule 56(e), they must not be considered on summary judgment."). That is, "the requirements of Rule 56(e) are set out in mandatory terms and the failure to comply with those requirements makes the proposed evidence inadmissible during the consideration of the summary judgment motion." *Friedel,* 832 F.2d at 970.

■ Mr. Sexson's affidavit stated:

Employees of the Defendant State Farm Fire and Casualty Company have ("State Farm") interviewed my friends, neighbors, business associates, former spouse, and credit providers by asserting the fact that I was a criminal, and that State Farm needed to document my criminal activity when such assertion was unwarranted in an attempt to harass, vex, and intimidate me from pursuing my claim.

R. 41. We agree with the district court that Mr. Sexson has failed to show that he has "any basis for asserting personal knowledge of State Farm's methods of inter-

viewing witnesses or its intentions when it conducted the interviews." R. 51 at 3 n. 2. Thus, the district court certainly did not abuse its discretion in refusing to consider the affidavit.

The Supreme Court of Indiana "has not defined the precise parameters of the tort of bad faith dealing by an insurer." *Donald v. Liberty Mut. Ins. Co.,* 18 F.3d 474, 484 (7th Cir.1994) (applying Indiana law). It has recognized, however, that:

> The obligation of good faith and fair dealing ... includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 519 (Ind.1993). Moreover, " '[a] jury's determination that a claim was, in retrospect, incorrectly denied is not sufficient to establish a breach of the duty to exercise good faith.' " *Donald,* 18 F.3d at 483–84 (quoting *Hickman,* 622 N.E.2d at 520). Further, " 'the mere finding ... that the insurer committed the tort [of bad faith] will not, standing alone, justify the imposition of punitive damages.' " *Id.* at 484 (quoting *Hickman,* 622 N.E.2d at 520). " 'Punitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing.' " *Id.* (quoting *Hickman,* 622 N.E.2d at 520).

■ In his brief, Mr. Sexson specifically states that for his bad faith argument he "relies on the fourth arm of the four-part test in *Erie,* 'exercising any unfair advan-

tage to pressure an insured into a settlement of his claim.'" Appellant's Br. at 10. Moreover, at oral argument he confirmed that *Erie's* fourth arm was the sole basis relied on in his brief for his claim of bad faith. However, with the exception of his inadmissable affidavit, Mr. Sexson has not brought forth any evidence of "unfair advantage" taken by State Farm. Further, even if we were to consider the affidavit, Mr. Sexson has not brought forth any evidence of "pressure" used by State Farm against him to settle his claim. Consequently, Mr. Sexson cannot prevail upon his chosen theory of bad faith.

■ We also note in passing that, if Mr. Sexson had made an argument of bad faith under some theory other than the fourth arm of *Erie,* State Farm had a good faith basis for denying liability, namely, reasonable suspicion of arson by Mr. Sexson. As the Supreme Court of Indiana recently stated, "[t]o prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability." *Freidline v. Shelby Ins. Co.,* 774 N.E.2d 37, 40 (Ind.2002). In raising an arson defense to liability on a contract, State Farm had every right to rely upon circumstantial evidence. *See Dean v. Ins. Co. of N. Am.,* 453 N.E.2d 1187, 1194 (Ind.Ct.App.1983). As the Court of Appeals of Indiana has noted specifically, "'where sufficient motive and opportunity of the insured to commit arson were combined with proof of an incendiary cause of fire, this court and others have considered the arson defense to be supportable by inference.'" *Id.* (quoting *Cora Pub, Inc. v. Cont'l Cas. Co.,* 619 F.2d 482, 485 (5th Cir.1980)).

Here, State Farm points out that it had evidence of motive and opportunity, as well as of an incendiary fire. As to motive, Mr. Sexson had been unsuccessfully trying to sell the property for a year. As to opportunity, Mr. Sexson, the only person with a key, was the last person to leave the house and locked it up. He also called the electric company to turn on the electricity, the direct cause of the igniting of the cloth, paper, and gasoline left on the stove top (two burners of which were turned to "High"). Finally, the fire department determined that the fire was incendiary. Thus, even though it did not prevail on its defense to the jury on the contract claim, State Farm certainly demonstrated a genuine good faith dispute on the issue of whether the fire was the product of Mr. Sexson's arson. Mr. Sexson has failed to establish that State Farm "had knowledge that there was no legitimate basis for denying liability" and thus has failed to show that it acted in bad faith. *Freidline,* 774 N.E.2d at 40.

Moreover, under any theory of bad faith, Indiana law requires Mr. Sexson to show "the additional element of conscious wrongdoing" or a "culpable mental state" by State Farm. *Colley v. Indiana Farmers Mut. Ins. Group,* 691 N.E.2d 1259, 1261 (Ind.Ct.App.1998). Mr. Sexson has produced no admissible evidence showing that State Farm engaged in culpable conduct.

### 4.

Mr. Sexson has failed to bring forth any evidence of bad faith; indeed, State Farm had a good faith dispute concerning its entitlement to the arson defense. Accordingly, the district court correctly granted summary judgment on the bad faith claim.

AFFIRMED