NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued June 8, 2007
Decided September 6, 2007

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

| | |
|---|---|
| No. 06-3233 | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division |
| R. D. LOTTIE, *Plaintiff-Appellant*, | |
| *v.* | No. 01 C 582 |
| WEST AMERICAN INSURANCE COMPANY, et al., *Defendants-Appellees*. | **William C. Lee**, *Judge*. |

**O R D E R**

R.D. Lottie sued his insurance carrier, West American Insurance Company, Inc. ("West"), alleging bad faith, breach of contract, and race discrimination after West denied Lottie's claims for fire damage on two houses because it determined that the damage was either not covered under the terms of the policy or barred by the arson defense. The district court granted partial summary judgment to West on Lottie's bad faith and discrimination claims. The remaining claims for breach of contract proceeded to trial, and a jury returned a verdict in favor of West on both

claims. Lottie appeals the district court's partial grant of summary judgment to West on his race discrimination and bad faith claims, and challenges the district court's refusal to admit an affidavit at trial, the court's jury instructions, and the jury's verdict on his breach of contract claims. We affirm.

I.

Lottie owns several houses in South Bend, Indiana which serve as rental properties, two of which are involved in this case: 226 Birdsell Street ("Birdsell") and 1412 Linden Street ("Linden"). While Lottie received tax benefits by owning these properties, he owed more than $180,000 on his rental properties and incurred additional expenses for the repair and cleaning costs and for continued insurance on the properties. Lottie insured these properties through policies West issued. Those policies provided coverage for various liabilities on the houses, but did not cover loss "caused by . . . vandalism and malicious mischief, theft or attempted theft if the dwelling has been vacant for more than 30 consecutive days immediately before the loss."

Lottie leases these houses to individuals who participate in the South Bend Housing Authority ("Housing Authority") Section 8 housing subsidy program. Through this program, the Housing Authority pays seventy percent of the monthly rent directly to the landlord and the participating tenant pays the remaining thirty percent. In order for landlords like Lottie to lease homes to individuals who participate in the program, the houses must pass a Housing Authority inspection, which ensures the dwelling meets certain safety and cleanliness standards. These inspections are conducted annually as well as after one tenant vacates the premises and before a new tenant may move into the house.

Since Lottie lives in California, Lottie's brother and sister-in-law, William and Debra Lottie ("William" and "Debra," respectively), who live in South Bend, assist him with the management of these properties. Debra serves as the primary contact with the South Bend Housing Authority, finds tenants for the properties, signs leases as Lottie's agent, and generally manages the properties, including arranging for repairs and submitting late notices to tenants. William has keys to all of the houses and makes arrangements for repairs when Debra informs him that they are needed. Also, William, who has twenty years of painting experience, paints the houses.

Debra, as Lottie's agent, leased the Birdsell property to Sunceray Shorter beginning in July 1998. Shorter's housing subsidy ended on March 31, 2000, at which time Debra informed Shorter that she could stay at the house pursuant to the

lease, but was required to pay the full rent amount. Shorter vacated the Birdsell property, but conflicting evidence was presented at trial regarding the exact date of Shorter's departure: Lottie testified that he had informed West's adjuster, Bob Freshour, that Shorter vacated the property on March 31 or April 1, and Freshour testified to the same. Debra testified that she provided notice to Shorter to vacate on April 8 or 9, never saw Shorter after April 9, and that the furniture was out of the home between May 5 and 10; and Freshour testified that William had told him that Shorter moved out at the end of April.

After Shorter vacated the Birdsell property, it was in need of light remodeling to repair holes in the dry wall and damage to the kitchen cabinets. On May 16, 2000, William went to the Birdsell property to paint the interior, bringing latex paint and gasoline with him to clean the brushes because the water had been turned off at the house. When he quit painting that day, William went to his mother's home around the corner where he and his mother later reported that the Birdsell property was on fire. An extensive investigation revealed pour patterns of gasoline in the upstairs hallway and bedroom and that the fire was started by gasoline ignited by human action. Following the investigation, West denied Lottie's claim on the Birdsell property citing the provision in its policy regarding vandalism and malicious mischief.

The Linden property similarly suffered fire damage on August 26, 2000, the same date the tenant, Michelle Leno, moved out. William described that property as "nasty," requiring a professional exterminator to take care of the cockroach problem and having suffered water damage from plumbing problems. West assigned Special Investigative Unit investigator Eugene LaBelle to investigate this back-to-back fire damage claim on Lottie's rental properties. This lawsuit was filed, however, before LaBelle completed his investigation.

Lottie filed suit against West alleging bad faith, race discrimination, and breach of contract. The district court dismissed the bad faith and race discrimination claims on partial summary judgment, and Lottie's breach of contract claims proceeded to trial. At trial, the jury heard testimony from Lottie, Debra, William, Freshour, and LaBelle. Also testifying were a representative from the local electric company, Carmen Swinson-Lake, and a fire expert, Jack Sanderson.

Swinson-Lake testified about the consumption of electricity at the Birdsell property. She explained that the utility bills for the Birdsell property from December 17, 1999, through January 2000, recorded the use of 419 kilowatt hours of power and from March 27, 2000, through April 28, 2000, and metered only seven kilowatt hours. Swinson-Lake further explained that an unscheduled reading was

taken on March 27th because the account was made final at that time, which occurs when a tenant moves out and requests that the electrical service be taken out of his name.

LaBelle testified at trial that his investigation revealed that both the Birdsell and Linden fires were caused by gasoline and occurred within three months of each other. He also noted that both properties were subject to inspection by the Housing Authority, and William was near the scene within blocks of the fires. LaBelle also testified that Lottie had insurance claims on two prior fires at rental properties. As for William's use of gasoline to clean brushes used to apply latex paint, LaBell stated that someone with William's experience should know that gasoline cannot be used to clean water-based paint materials.

Sanderson, in turn, testified that he investigated the Birdsell property and concluded that there was no accidental cause for that fire and that it was likely started by human action with gasoline serving as the accelerant for that blaze. Sanderson further testified that gasoline cannot be used to clean latex-based paint materials. As to the Linden property, Sanderson stated that it, too, was a set fire, likely with a liquid accelerant because there was nothing in the area of the fire that would serve as fuel. Sanderson also said that the Linden house smelled of gasoline, and a gas can was on the front porch. Finally, Sanderson testified that there was also no accidental cause of the Linden fire.

At trial, Lottie sought to introduce the affidavit of Robert Thomas Moore for the purpose of presenting evidence as to when Shorter vacated the Birdsell property. Moore was a neighbor of the Birdsell property, and Lottie initially presented Moore's affidavit in connection with his motion for summary judgment in 2002. Moore was on Lottie's witness list for trial, and West inquired about whether Lottie would call Moore to testify at trial. A day and a half before trial commenced, Lottie's counsel responded to West's attorney that he was unable to determine whether Moore would be called as a witness because Moore was in a nursing home. On the third day of trial, Moore, his daughter, and a caretaker from his nursing home came to court, and the district court conducted a hearing out of the presence of the jury. At that hearing, it became clear that Moore was not competent to testify at trial due to some form of dementia, and Lottie moved for the admission of Moore's affidavit. The district court sustained West's objection to the affidavit's admission because it determined that there was more probative evidence in the record and because of Lottie's lack of notice to West of his intent to introduce Moore's affidavit into evidence.

West sought to include in the jury instructions an instruction on the civil arson defense, which under Indiana law provides a basis for the denial of coverage under a fire policy and requires that an insurer "establish the truth of its claim of wilful burning by the insured by a preponderance of the evidence." *Dean v. Ins. Co. of N. Am.*, 453 N.E.2d 1187, 1194 (Ind. Ct. App. 1983) (citation omitted). Before the case was submitted to the jury, Lottie objected to the district court giving the jury the arson defense instruction, contending that there was no evidence that Lottie intentionally caused loss to the properties either directly or indirectly. The district court overruled Lottie's objection. Lottie also sought to include a jury instruction stating that:

> when interpreting an exclusionary clause of an insurance policy, the clause must clearly and unmistakably bring within its scope the particular act or omission that will exclude coverage. Any doubts as to the scope of the exclusion must be construed against the defendant insurance companies and any ambiguities are to be resolved against the insurers in favor of the plaintiff.

Lottie sought to include this instruction because he argued that the terms vandalism and malicious mischief are ambiguous and do not exclude coverage for fire. The district court rejected Lottie's request.

The jury returned verdicts in favor of West on the breach of contract claims relating to the Birdsell and Linden properties. Lottie appeals the district court's partial grant of summary judgment on his race discrimination and bad faith claims, the jury's verdicts on the breach of contract claims, the jury instructions, and the district court's refusal to admit the Moore affidavit at trial.

II.

On appeal, Lottie first claims that the district court erred in granting summary judgment. In diversity cases such as this, federal law controls procedural issues whereas state law controls substantive issues. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). In reviewing a district court's grant of summary judgment, "[w]e view all facts and draw all inferences in the light most favorable to the non-moving party. Summary judgment is appropriate where the evidence before the court indicates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Abstract & Title Guar. Co., Inc. v. Chicago Ins. Co.*, 489 F.3d 808, 810 (7th Cir. 2007) (citation omitted). Therefore, this court will

review the district court's grant of partial summary judgment de novo. *Charter Oak Fire Ins. Co. v. Hedeen & Co.*, 280 F.3d 730, 735 (7th Cir. 2002) (citation omitted).

Lottie first argues that there is a genuine issue of material fact that West acted in bad faith and committed race discrimination by denying his claims. Incorporating by reference his motion for reconsideration and his filings in a previous appeal, Lottie sets forth a five-page series of questions which he asserts establish the existence of a genuine issue of material fact, but without providing any case citations in support of his litany of questions. Lottie's argument regarding the district court's partial grant of summary judgment in favor of West is inadequate. Federal Rule of Appellate Procedure 28(a)(9) requires an appellant to present his "contentions and the reasons for them, with citations to the authorities and parts of the records on which the appellant relies; . . . ." As we further explained in *Pitsonbarger v. Gramley*, 141 F.3d 728, 740 (7th Cir. 1998), "[p]art of the appellate process is culling from the trial record those arguments that deserve presentation to the court of appeals and devoting serious thought to them. If incorporation by reference were enough, this process would be seriously compromised." Because Lottie did not develop his argument or provide supporting citations on appeal, he has waived any claim that the district court erred in granting summary judgment to West on his bad faith and race discrimination claims. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

We next address Lottie's appeal of the jury verdict in favor of West on breach of contract claim on the Birdsell property. "To sustain overturning a jury verdict, the record must demonstrate no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. We are obliged to leave the judgment undisturbed unless the moving party can show that no rational jury could have brought in a verdict against [him]." *Woodward v. Corr. Med. Serv. of Ill.*, 368 F.3d 917, 926 (7th Cir. 2004) (internal quotations and citations omitted).

In challenging the jury verdicts, Lottie contends that the West policy does not exclude coverage of fire, including arson. Also, because it was unclear on what date the Birdsell property became vacant, Lottie argues that the jury could not rule in favor of West on the thirty-day vacancy clause. Thus, Lottie concludes that the jury verdict in favor of West on his breach of contract claim on his Birdsell policy is contrary to law. The West policy, as set forth above, excludes from coverage damage incurred by vandalism or malicious mischief incurred once the property had been vacant for thirty days. Policy, Perils Against Insured § 2f. While there was conflicting evidence presented at trial about what date Shorter vacated the

property, evidence was presented from which the jury could have reasonably determined that the property had been vacant for thirty days, namely Lottie's statement to West's investigator that Shorter left on April 1 or April 2 and Debra's testimony that Shorter was gone by April 9. Additionally, the jury heard testimony about the dramatic decline in electricity usage after the electric company account for the Birdsell property was made final on March 27. Also, Sanderson and Freshour testified at trial that the fire was intentionally set, thereby providing a basis upon which the jury could conclude that the damage was caused by vandalism or malicious mischief, regardless of who set the fire. Accordingly, there were facts presented into evidence upon which a reasonable jury could determine that the damage to the Birdsell property fell within the West policy exclusion for vandalism or malicious mischief, and Lottie has not met his burden of showing that a rational jury could not enter a verdict against him. Therefore, the jury reasonably entered a verdict that West did not breach its contract regarding the policy on the Birdsell property.

Just as with the Birdsell property, Lottie also argues that the jury's verdict regarding the West policy on the Linden property should be overturned. Because the Linden property had not been vacant for thirty days the vandalism exclusion does not apply. However, even without a specific provision in the insurance policy, under Indiana law, an insurer may deny coverage under a fire policy because of an arson, and "an insurer raising an arson defense must establish the truth of its claim of wilful burning by the insured by a preponderance of the evidence." *Dean v. Ins. Co. of N. Am.*, 453 N.E.2d 1187, 1194 (Ind. Ct. App. 1983) (citation omitted). "Circumstantial evidence is sufficient to establish proof of arson." *Hoosier Ins. Co., Inc. v. Mangino*, 419 N.E.2d 978, 986 (Ind. Ct. App. 1981) (citation omitted). LaBelle, Freshour, and Sanderson all testified that the fire was intentionally set by gasoline, thereby providing a sufficient basis for the jury to conclude that the fires were the result of willful burning. As to Lottie's involvement, evidence was presented that Lottie had submitted two previous insurance claims for two fires on other rental properties. Also, he faced some financial difficulties. He was over $180,000 in debt with all of his properties and was responsible for the repairs and extermination needed on the two properties that burned, and the properties were both subject to inspection by the Housing Authority for cleanliness and safety before they could be re-leased under the program. In addition, there was evidence that William was Lottie's caretaker, had keys to Lottie's rental properties, and was in the vicinity when both the Birdsell and Linden fires started. All of these facts provide sufficient circumstantial evidence for the jury to find in favor of West on its arson defense, and Lottie does not attempt to rebut this evidence. Therefore, the jury entered a rational verdict on the breach of contract claim on the Linden property policy, and Lottie has failed to present a sufficient basis to disturb it.

Lottie also challenges the district court's denial of his request for an ambiguity instruction, and the district court's overruling his objection to the inclusion of the civil arson defense instruction. We review jury instructions for an abuse of discretion and "with deference, analyzing them as a whole to determine if they accurately state the law and do not confuse the jury." *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 759 (7th Cir. 2003) (citation omitted). If the instructions misstate the law, then the reviewing court must determine whether the mistake confused or misled the jury thereby prejudicing the litigant. *Id.*

As to the ambiguity instruction, Lottie proposed the following instruction:

> You are instructed that when intepreting [sic] an exclusionary clause of an insurance policy, the clause must clearly and unmistakably bring within its scope the particular act or omission that will exclude coverage. Any doubts as to the scope of the exclusion must be construed against the defendant insurance companies and any ambiguities are to be resolved against the insurers in favor of the plaintiff.

The court rejected the proposed instructions, instead offering to submit an instruction that any doubts about the policy language should be construed against the insurer. Lottie declined this proposal, and neither was included.

Indiana law provides that an insurance policy's "exclusionary clause must clearly and unmistakably bring within its scope the particular act or omission that will bring the exclusion into play." *Erie Ins. Co. v. Adams*, 674 N.E.2d 1039, 1041 (Ind. Ct. App. 1997) (citation omitted). The exclusionary clause at issue in this case is the exclusion of coverage for vandalism or malicious mischief after a thirty-day vacancy. The act alleged here is the intentional starting of a fire after a thirty-day vacancy. Because the policy's language "clearly and unmistakably bring[s] within its scope the particular act" alleged in this case, the district court's proposal did not misstate the law, and while the district court denied Lottie's proposal which was an accurate statement of the law, there was no harm because intentionally starting a fire clearly fell into the exclusion. Moreover, we note that Lottie has not claimed he was prejudiced by the district court's rejection of his proposed instruction. Therefore, we conclude that the district court did not abuse its discretion in by rejecting Lottie's proposed instruction.

Lottie also objected to the arson instruction. Specifically, Lottie challenges the district court's decision to instruct the jury:

> If you find by a preponderance of all the evidence that the plaintiff, or those acting at his direction or on his behalf, intentionally set the fire at either of his rental properties, then you must return a verdict for the defendant and against the plaintiff on that claim.

Lottie does not claim that this instruction misstated Indiana law on the arson defense. Rather, he argues that the evidence does not support this instruction. As discussed above, there was evidence, though circumstantial, in the record that the fires were intentionally set at Lottie's direction. Therefore, the district court did not err in providing the jury this instruction.

Finally, Lottie claims that the district court erred in refusing to admit into evidence Moore's affidavit. We review a district court's evidentiary rulings for an abuse of discretion. *Aliotta*, 315 F.3d at 758. Lottie argues that the district court abused its discretion by refusing to admit into evidence Moore's affidavit because West knew Moore was going to be a witness as early as June 2003. Lottie incorrectly assumes that Moore's inclusion on his witness list automatically permits him to submit an affidavit in lieu of Moore providing live testimony and being subject to cross- examination. This assumption ignores Federal Rule of Evidence 807 which provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed. R. Evid. 807. We conclude that the district court did not abuse its discretion in refusing to admit Moore's affidavit. Lottie did not notify West "sufficiently in advance of trial" of his intention to use the affidavit. Rather, he only notified West of this intention during the trial itself and only after a hearing to determine Moore's competency. Lottie presents no reason why he did not ascertain Moore's availability prior to trial and discover his need to introduce Moore's affidavit in lieu

of Moore's live testimony. Also, the fact to which Moore's affidavit spoke, namely the date when Shorter left the Birdsell property, was addressed at trial by Lottie's, Debra's, and William's testimonies, and therefore it was not "more probative on the point for which it was offered than any other evidence." Fed. R. Evid. 807(C). Accordingly, the district court did not abuse its discretion in denying Lottie's motion to admit Moore's affidavit.

## III.

Lottie has waived his right to challenge the district court's grant of summary judgment on his bad faith and discrimination claims. The district court did not abuse its discretion in refusing to admit Moore's affidavit or in providing jury instructions. Finally, there was a legally sufficient evidentiary basis for the jury's verdicts on Lottie's bad faith claims. Accordingly, we AFFIRM.